GOULD *v.* SENEY *et al.*

(*Supreme Court, General Term, First Department.* May 9, 1890.)

**1. EQUITY—ACCOUNTING—WHEN ORDERED.**
A committee appointed to receive and disburse subscriptions for the purpose of effecting a consolidation of certain railroad companies, and extending the lines, may be required to account to the subscribers for the amount so received; and it is immaterial whether or not they were originally trustees, or were legally appointed. Affirming 5 N. Y. Supp. 928.

**2. CONSOLIDATION OF RAILROAD COMPANIES.**
A consolidation of three railroad companies was proposed, the necessary funds to be raised by subscriptions of the stockholders of the several companies. It was doubtful whether one of the companies (the R. & A.) could obtain legislative cor-

sent to enter the combination, but it was arranged that the other two should combine at all events, and the subscribers were aware of this. The first call under the subscription stated that it was for the extension of one of the two roads whose consolidation was definitely arranged for, and for "other purposes." Afterwards the entire fund was paid in. A committee was appointed, after the first installment was paid, to receive and disburse the fund. After this the consolidation agreement was filed. *Held,* that a loan by the committee to the R. & A. Company, for the purpose of completing its line of railroad, to be repaid in case the agreement should not become operative as to that company, was a misappropriation of the fund, for which they became liable to account to the subscribers upon the legislature refusing to consent to the company entering the combination; but that the shareholders could not, at the time of compelling such accounting, insist that the committee should also account for bonds taken by them as collateral for the loan. Reversing 5 N. Y. Supp. 928.

Appeal from special term, New York county.

Action by David H. Gould, who sues for himself and others, against George I. Seney, Samuel Shethar, Metropolitan National Bank, and the Ohio Central Railroad Company. Plaintiff appeals from the final judgment entered therein, and from portions of the interlocutory judgment.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Oliver P. Buel* and *George M. Harwood,* for appellant. *Thomas Thacher, John W. Simpson,* and *Fisher A. Baker,* for respondents.

DANIELS, J. The action was brought by the plaintiff in his own behalf, and for others similarly situated, as subscribers to a fund for the construction and completion of a railway. Prior to the making of the subscriptions to create the fund for this object, a railway had been constructed from Toledo, in the state of Ohio, to Canton, in the same state. A railway had also been chartered by the state of Virginia, and mainly constructed from the city of Richmond to Clifton Forge, and a third railway had been provided for by a charter in the state of West Virginia from Point Pleasant, on the Ohio river, to the falls of the Kanawha, or the mouth of the Gauley. The first of these roads, with the right to extend it to the Ohio river, was owned by the Ohio Central Railroad Company, and the line from that point southerly, no part of which had been constructed, was within the charter of the Atlantic & Northwestern Railroad Company; while the third road, designed to and extending to the city of Richmond, was the property of the Richmond & Alleghany Railroad Company. A conference is shown to have taken place early in the year 1881 for the combination of these three lines into one railroad, extending from Toledo, in the state of Ohio, to Richmond, in the state of Virginia. This was in the nature of an informal meeting of the directors of the different corporations, and it resulted in an agreement to endeavor to raise a fund of $5,000,-000 from the individuals interested in the properties of these different companies, to complete the construction and equipment of the railways, and thereby form a continuous line from Toledo to Richmond; and, pursuant to the understanding which was reached between these persons, notices were published, notifying the stockholders of the three different companies to contribute in proportion to the stock or certificates held by them, for the creation of this fund of $5,000,000. The contributions were proposed to be apportioned between the stockholders of the different companies, so as to obtain from those of the Ohio Central Railroad Company $2,400,000; from the holders of trust certificates of the Richmond & Alleghany Company, $2,000,000; and from the stockholders of the Atlantic & Northwestern Company, $600,000. And this fund appears to have been obtained, and in part, at least, appropriated to the partial construction of a bridge across the Ohio river, and the partial construction of the railway over the intervening distances upon which it had not previously been built; but neither the bridge nor this intervening railway was finished or completed. To carry out the enterprise a committee was appointed, consisting of the defendants George I. Seney, who was a director of the Ohio Central Railroad Company, and Samuel Shethar, who was a director of the

Richmond & Alleghany Railroad Company. The appointment was not made by any formal action, but these two persons were suggested by the directors, or a portion of them, as the individuals who should constitute this committee. The action resulting in the selection of these persons as committee has been described and supported in detail by the testimony of the witness Calvin S. Brice, who was sworn and examined on behalf of the defendants; and that he was certainly accurate in the statements made by him as a witness upon this subject appears further from the answers of each of these defendants, as well as of the Ohio Central Railroad Company. In this respect, the answer of each of these defendants is identical, and by the nineteenth paragraph of each answer it was stated "that prior to July 1, 1881, this defendant and the defendant Shethar were requested by the said three companies, and consented, to act as a committee to direct the disposition and disbursement of said fund so to be raised for the purposes aforesaid, and with the said railroad companies to arrange a plan for the expenditure of said fund, and to agree upon the securities to be received by said committee for distribution among the subscribers thereto." And this fact is further fortified by the recital in what has been called the syndicate agreement, to which these two persons were parties, dated the 1st day of July, 1881, for they are there described as a committee; and, in a further agreement, dated on the 31st of October, 1882, made with the Ohio Central Railroad Company, they are also described as a committee, "representing what is known as the 'Richmond & Alleghany and Ohio Central Railroad Syndicate.'" And upon this state of the evidence it was found by the court that these defendants "were selected to superintend the work of receiving the money and delivering the securities to the subscribers of the fund." The syndicate itself consisted of the persons owning the stock and trust certificates already mentioned; and the province of these defendants, as the committee, was to represent the members of the syndicate, and to expend and appropriate money to the objects for which it was contributed; and they acted under the authority conferred upon them until the execution of the agreement already mentioned, bearing date the 31st of October, 1882.

The object of the conference which took place concerning the raising of the fund is stated by the witness Calvin S. Brice to have been "to complete their respective roads, and to construct the intervening link between the two;" and "for that purpose it was agreed that they should attempt to raise the sum of five million of dollars." And it was stated by him "they would recommend the stockholders in each of their respective companies to subscribe to this fund, if five hundred thousand dollars of the fund, as paid in, should be paid in to the Ohio Central Railroad Company for completing its line, and twelve hundred and fifty thousand dollars should be paid in to the Richmond & Alleghany Railroad Company for completing its line;" and that the residue over the sum of $250,000 for the Atlantic & Northwestern Railroad Company, amounting to the sum of $3,000,000, should be used for construction. This statement is also supported by the answers of the three defendants already mentioned; for, by the eighteenth paragraph of each answer, it has been stated "that, prior to July 1, 1881, and in connection with the proposed consolidation, the said three companies agreed to raise from their stockholders a fund of five million of dollars, to be spent in completing, extending, and improving their railroads, equipment, and property;" and that the money should be distributed in the manner already mentioned, except that the $1,250,000 for the Richmond & Alleghany Railroad Company should be received with the proviso that if that company should not ultimately come into the consolidation this should be repaid; and these portions of the answers were used as evidence upon the trial.

But neither the testimony of the witness Calvin S. Brice nor any other supported the allegation made in the answers that the $1,250,000 should be paid to the Richmond & Alleghany Railroad Company, subject to this or any

other proviso; but it was to be paid, according to his testimony, if it was paid at all, "for completing its line;" and by the notices which were published the contribution of money was invited for the object of constructing and equipping a continuous line of road, so far as that remained necessary, from the city of Toledo to the city of Richmond.   The notices which were published to obtain this money were in the same form, with the exception of the name of the company to whose stockholders, or the holders of whose trust certificates, they were addressed.   These notices were in this form:

"OHIO CENTRAL R. R. COMPANY.

"NEW YORK, July 1st, 1881.

"To the Stockholders of the Ohio Central Railroad Company:   Notice is hereby given that subscriptions for $5,000,000 for the construction of ' River Division,' from Corning, Ohio, to ' Central Division ' at Chesapeake and Ohio Railroad crossing, Ohio River bridge, and other purposes, have been allotted as follows:   To stockholders of Ohio Central Railroad Company, $2,400,000; to holders of trust certificates of Richmond and Alleghany Company, $2,000,-000; to stockholders of Atlantic and Northwestern Railway Company, $600,-000.   Holders of Ohio Central Railroad stock will be entitled to subscribe for $2,000 for each 100 shares, if privilege is taken on or before July 16, 1881, by presentation of their certificates to E. R. Leland, secretary of Richmond and Alleghany Railroad Company, No. 2 Wall street, room No. 39, that such certificates may be stamped ' *ex* privilege,' (transfer unnecessary,) accompanied by check for first call of 10 per cent., payable to the order of the Metropolitan National Bank.   Remainder of subscription will be subject to call of syndicate committee.   Subscription certificates will be issued entitling subscribers to a *pro rata* share of such securities as may be issued by subsequent agreement of the committee and railroad company, and also the right to *pro rata* share of the subscription for the construction of the Central division when offered.   Right to subscribe will expire July 16, 1881, as the balance of subscription not then taken has been placed.

"Per order,　　　　　　　　B. G. MITCHELL, Secretary."

—And they stated the object of the subscription to be for the construction of the River Division, from Corning, Ohio, to the Central Division, at the Chesapeake & Ohio Railroad crossing, and the construction of a bridge over the Ohio river, and for other purposes.   And it was after the notices were published, and in that manner brought to the attention of the stockholders and holders of trust certificates, that the subscriptions to the fund were made by them; and, after making such subscriptions, they received receipts from the Metropolitan National Bank, where the money was paid in, in this form:

"SUBSCRIPTION CERTIFICATE.

"No. ——.　　　　　　　　　　　　　　　　$——.

"This certifies that —— subscribes to the fund for the purchase, construction, and equipment of the Richmond, Alleghany and Ohio Central Railroad Company to the amount of —— dollars, and is entitled to participate in the distribution of stock and bonds in accordance with the terms and conditions of the subscription: provided, the several installments aggregating the above-named amount shall have been paid and indorsed hereon.   Interest will be added to all unpaid installments.   A *pro rata* share of additional subscriptions is reserved to the holder of this certificate.   This certificate is not transferrable without the consent of the syndicate committee.   In witness whereof the Metropolitan National Bank, N. Y., as fiscal agent, has caused this certificate to be signed by its cashier, this —— day of ——, 188–, in the city of New York.

"METROPOLITAN NATIONAL BANK.

"By ——, Cashier."

A controversy arose upon the trial, as well as upon the argument, as to the significance in the notice of the phrase "other purposes;" but the use of these words was obviously not made in this manner to permit the syndicate committee mentioned in the notices to make any disposition of the funds which they might consider to be fit or proper, but what was designed by the use of the words was to allow the fund to be used for purposes of the same general description, to accomplish the end designed to be brought about by its creation; and that was to construct, complete, and equip this continuous line of railroad. And the receipt which was finally given by the bank for the money supports this construction, for it states the fund to be "for the purchase, construction, and equipment of the Richmond, Alleghany and Ohio Central Railroad Company," which was to be the name of the company in case the consolidation was effected which it was proposed to make of these three different companies. And that is conformable to the objects mentioned as the ends to be accomplished in the testimony of the witness Calvin S. Brice, and the language of this receipt, and this and the other testimony may be legally considered to place a definite significance on this phrase, conformable to the intention and expectations of the contributors to the fund, as they would naturally be created by the publication of this notice; for general language employed in this connection is required to be restricted by the specific purpose previously mentioned and intended to be accomplished by the persons engaged in the business. This rule has been frequently stated and acted upon by the court's permitting and sanctioning a reference to the objects and designs of the parties, as well as to other instruments relating to them, to place a definite significance and restraint upon the employment of general language. *Van Hagen* v. *Van Rensselaer*, 18 Johns. 420; *Coddington* v. *Davis*, 1 N. Y. 186; *Elmendorf* v. *Lansing*, 5 Cow. 468, 470, 471; *Sims* v. *Trust Co.*, 103 N. Y. 472, 479, 9 N. E. Rep. 605. The fund in this manner obtained is stated by the plaintiff in his evidence to have been received by the committee at the Metropolitan bank; and the other evidence in the case, as well as the admissions contained in the pleadings, warrant the conclusion that this statement was substantially correct. And it has been found as a fact by the court that these two defendants "were designated as a committee of the syndicate to attend to the application of such fund for the purposes for which it had been subscribed, and they assumed the duties of such committee, and the charge of such fund;" and it was further found by the court, as a conclusion of law from the facts, that this fund passed under the control of these two defendants, and "that the defendants George I. Seney and Samuel Shethar, having assumed the relation of committee of the syndicate, the subscribers to the fund of $5,000,000 before mentioned, and the charge of said fund, became and are trustees or *quasi* trustees of said fund for the subscribers thereto, and liable to account therefor in this action;" and they were accordingly held liable to account for the use and disposition made of this fund by the court, as they very well might be under the evidence given upon the trial. *King* v. *Barnes*, 109 N. Y. 267, 286, 16 N. E. Rep. 332; *Marvin* v. *Brooks*, 94 N. Y. 71. And, having received the money in their capacity of a committee of this syndicate of subscribers, they were legally as well as equitably bound to appropriate it for the promotion of the ends and objects for which the fund itself was created. Good faith in this respect was required from these persons in the discharge of their obligations to the subscribers to the fund. *Murray* v. *Beard*, 102 N. Y. 505, 7 N. E. Rep. 553; *Railroad Co.* v. *Kelly*, 77 Ill. 426; *Abbot* v. *Rubber Co.*, 33 Barb. 578. Their obligations were those of trustees or special agents, requiring them to use the fund within the limits of the authority created, in the manner already mentioned. *Hun* v. *Cary*, 82 N. Y. 65.

The consolidation of the three companies, as that was proposed, was not consummated, for the Richmond & Alleghany Company was not authorized

to enter into it, or become a member of the consolidation, without the permission of the legislature of the state of Virginia; and at the next session of the legislature an application was made for the passage of an act securing this permission, but. it was not obtained, and the bill introduced for that object was defeated in the month of January, 1882, and the consolidation which actually did take place, and which had been provided for in this contingency, was between the Ohio Central Railroad Company and the Atlantic & Northwestern Railroad Company, existing under the laws of the state of West Virginia.

In this state of the facts the Richmond & Alleghany Railroad Company never became entitled to any part of the fund raised by these subscribers, for that fund was contributed to provide for the expense of completing and equipping a continuous line of railroad from Toledo to the city of Richmond, and the Richmond & Alleghany Company was intended to share in the fund only for the purpose of completing its own line of railroad. That is evident from the testimony of the witness Calvin S. Brice, as well as the other testimony in the case. It is true that the agreement dated on the 1st of July, 1881, recites the fact that the sum of $1,250,000 should be applied to completing the railroad of the Richmond & Alleghany Company, upon the condition "that in case the said agreement of consolidation should not become operative as to the said Richmond & Alleghany Railroad Company, the said sum of one million two hundred and fifty thousand dollars shall be repaid to said committee," etc. But this agreement is shown not to have been in fact made until some time after the early part of January, in the year 1882. The subscribers to the fund were neither of them parties to the agreement; but, as it was made and executed, it was, between the committee and the Ohio Central Railroad Company and the Ohio Central Coal Company, owned by the railroad company, and it could not be attended with the effect of changing the destiny for which the fund itself was created. Before the agreement was made or executed, the rights of the parties had become fixed, and they obligated the committee to make use of the fund alone to carry out the objects for which it had been created, and to preserve and maintain the designs of the contributors, as that appeared from the papers and evidence in the case. This committee failed to do that; for, after the legislature of Virginia had refused to authorize the Richmond & Alleghany Company to become a party to the consolidation, the committee advanced from this fund to that company the sum of $589,000. Previous to the failure of the bill in the legislature, it had advanced additional amounts to the same company, aggregating, with the advances after the failure of the bill, the sum of $1,250,000; and that this money was paid over to the Richmond & Alleghany Railroad Company, under the authority of the committee, was admitted by them in the tenth paragraph of their respective answers, as well as in the answer of the Ohio Central Railroad Company itself. The Richmond & Alleghany Company never was in a position to be entitled to any part of this money, for its right to the contribution which was to be made to it was dependent upon its becoming a member of the consolidation, and that it could not do without the proposed legislation, which it was unable to obtain. Beyond that the committee was at no time authorized to make a loan of this sum of money to the Richmond & Alleghany Railroad Company. What it was authorized to do, and all that it could do for this company, was to pay over this sum of money to it for the completion of this line of railroad; and that it was permitted to do only to place it in the condition which would become necessary to make it a part of the consolidated railroad. No authority was in any form given by the subscribers, or either of them, to loan this sum of money to this railway company, and, in making the loan as it did, it used so much of the fund without right, and for an object not contemplated or intended by the persons who contributed the money. If any doubt can exist as to the correctness of this con-

struction of the facts, concerning so much of the money as passed into the possession of the Richmond & Alleghany Company before the bill was rejected by the legislature, none whatever can exist as to the residue, which was paid over after the occurrence of that event.    There was no reason whatever why this sum of $589,000 should have been parted with by the committee, and loaned to the Richmond & Alleghany Railroad Company, after it had become demonstrated by the failure of its bill that it could not be a party to the consolidation.    For that amount surely, and it would seem, also, for the residue of the loan, these defendants should have been held liable to account in this action, for it was a misappropriation, in violation of the authority conferred upon the committee, of this entire sum of $1,250,000; and the plaintiff in his own behalf, as well as representing the other shareholder who contributed to the fund, was authorized to prosecute this action for this accounting.  *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52, 60.

It was shown upon the trial that 80 per cent. of $4,000,000 in amount of bonds secured by a mortgage upon what has been called the "River Division of the consolidated road," and 80 per cent. of $4,000,000 River Division income bonds, secured in like manner, and 100 per cent. of the stock of the new company, had been distributed among the persons who contributed to the creation of this fund of $5,000,000.    But that division of bonds and stock was no legal or equitable defense, standing in the way of the enforcement of this right to an accounting.    For if this sum of money had not been loaned as it was, it would have been applied to the completion of the bridges and of the railroad required to be constructed over this division, and in that manner have enhanced, in the hands of the subscribers to this fund, the value of these securities.    As it was, in fact, the bridges were not completed; neither was the railway wholly constructed, but important portions, requiring large expenditures of money, were left unfinished.    And no advantage could be obtained by reason of that circumstance, in the way of earnings which would be applicable upon either the stock or the bonds in this manner divided.    And since the division a settlement between the committee and the consolidated company took place, by which the committee transferred the work in this condition to that company, and they were released by it from all further obligations under their contract, which they had entered into to construct and complete these bridges and this railroad; and the result has been that the property has since been foreclosed and sold under the mortgages given upon it, and by this distribution of stock and bonds, as the evidence has presented the case, no advantage whatever accrued to the subscribers to the fund, and their inability to obtain any advantage whatever from earnings appears to have arisen out of the failure of the committee to perform the agreement which they entered into for the construction of the bridges and the completion of the road, and the misappropriation of the moneys, which, by reason of the inability of the Richmond & Alleghany Company to become a party to the consolidation, were subject to their disposal.

The agreement by which the committee were relieved from further liability made with the consolidated company in no way affected their liability to these subscribers.    It related wholly to the obligations of the committee to the railway company, and the subscribers to the fund in no manner participated in or assented to the settlement which took place; and as the committee were, by what had transpired, made trustees in effect for the contributors to this fund, they remained liable, notwithstanding this settlement, upon the obligations which had been incurred in favor of the subscribers.    That has been fully settled by the decision made in the action, holding this committee to have incurred the obligations of trustees in the disposition of these funds in favor of the subscribers.    Neither party has appealed from that part of the determination of the court, and consequently it remains as a fixed and permanent fact, to be acted upon in the case.

It appeared by an admission made upon the trial that the sum of $148,-066.52 had been paid from this fund upon coupons of the Ohio Central Railroad Company. By whom the payments were made does not clearly appear from the case. It may have been done by the company itself, from moneys surrendered to it at the time when the agreement of the 31st of October, 1882, was made, for that recites that all the moneys in the hands of the committee were then transferred to the railroad company; but whether the payments were made by the committee, or by money transferred to the company under the terms of this settlement, the case is not materially changed, for no authority appears to have been anywhere created by which the fund contributed by the subscribers could be legally appropriated to the payment of these coupons. If the appropriation was authorized, or rightfully made, it was for the committee to prove the fact before this expenditure or distribution of so much of the fund could be allowed to them, (*Marvin* v. *Brooks*, 94 N. Y. 71, 75;) and no proof of that fact was offered or given upon the trial. As to this sum, therefore, as well as the other, the committee should have been required by the interlocutory judgment to account in the action.

Another contested item involved in the trial of the action was the sum of $500,000, paid to the Ohio Central Railroad Company. But by the agreement which was entered into between the directors of the companies, and which the committee was selected in part to carry into effect, this company was to receive this sum of money for the completion of its own line, and the money is found to have been, as it probably was, paid to that company for that object; and as it was authorized, not only by what took place between the directors at the time mentioned by the witness Calvin S. Brice, but the fund, according to the notices published and the receipts given, was to be in part appropriated to this object, the payment appears to have been within the authority conferred upon the committee, and for that amount the plaintiff, and the persons represented by him in the action, accordingly were not entitled to an accounting, and the complaint was properly dismissed so far as it was against the railroad company.

At the time when the loan of the $1,250,000 was made to the Richmond & Alleghany Railroad Company, $2,000,000 in amount of its second mortgage bonds were transferred to the committee as security for the loan; and these bonds, in the settlement which took place between the committee and the railroad company, were transferred to the latter, and, under its authority, a settlement was finally made by which the bonds were to be taken in satisfaction of the liability of the Richmond & Alleghany Company for the repayment of the loan. After that a loan of money amounting to the sum of $500,000 was negotiated in favor of the Ohio Central Railroad Company, as it had been consolidated, from the Metropolitan National Bank, and these bonds have been hypothecated as security for the loan. The court held upon the trial that this was an authorized disposition of the bonds, and that the plaintiff was not entitled to an accounting from the bank on account of this transaction, and that conclusion seems to have been supported by the facts as they were presented in the case; for the defendants could not consistently be held liable to account in favor of the plaintiff and his associates for the moneys they had loaned to the Richmond & Alleghany Railroad Company, and at the same time a liability be enforced against the bank because of the receipt of these bonds in this manner by it. The two remedies were entirely inconsistent; and, as the plaintiff endeavored to enforce the liability of the committee to account for the misappropriation of the money, and to render them liable because of that act, he could not at the same time insist upon it that these bonds also should be accounted for and appropriated to the benefit of himself and his associates. An accounting for the money itself by the committee would fully satisfy the primary object of the action; and even if the bank was chargeable with notice of the manner in which the railroad company had obtained these bonds, because

of the fact that a director in the company was a member of the committee and an officer of the bank, it would still be entitled to hold the bonds as security for the payment of its loan. The court at the trial held the bank not to be liable in the action, and dismissed the complaint so far as it was designed to present a cause of action against that defendant, and that dismissal seems to have been right.

The judgments, therefore, in favor of the Ohio Central Railroad Company and of the Metropolitan National Bank should be affirmed. But as to the residue of the final judgment, it should be reversed, and the report of the referee, beyond charging the committee with the money, set aside upon the exceptions taken to it, and the interlocutory judgment so far modified as to require these two defendants to account for the $1,250,000, besides the interest thereon, loaned by them to the Richmond & Alleghany Railroad Company, and the $148,066.52, with interest thereon, paid upon the coupons of the Ohio Central Railroad Company; and, as so modified, the interlocutory judgment should be affirmed, without costs to either party. All concur.