FRANCIS S. BANGS ET AL. V. D. SULLIVAN ET AL.

Decided February 25, 1903.

**1.—Nonsuit—Intervention by Stockholder—Judicial Discretion.**

Where suit was brought by plaintiffs as a reorganization committee of an insolvent corporation to enforce and carry out an agreement made on behalf of its stockholders with a mortgagee of the corporation to prevent a sacrifice of its property at foreclosure sale, and after a stockholder had obtained leave to intervene, but before the filing of his plea of intervention, plaintiffs took a nonsuit, it was in the discretion of the court, upon allegations of fraud and of collusion between the plaintiffs and the defendants, to set aside the nonsuit and allow the plea of intervention to be filed.

**2.—Same—Affirmative Relief.**

Where, however, the intervener's purpose was merely to protect his own interests, and not those of all stockholders similarly situated, it was error for the court to refuse plaintiffs the right to take a nonsuit subject to the intervener's right to prosecute his suit for affirmative relief against defendants and such of the plaintiffs as his plea placed in the attitude of defendants.

**3.—Same—Right to Take Nonsuit—Majority of Committee.**

The right of plaintiff committee to take a nonsuit could not be denied because one of them refused to join therein where it was expressly provided in the agreement between the stockholders and the committee that the powers of the latter to institute, prosecute, compromise and dismiss suits might be exercised by a majority of its members at any time.

**4.—Same—Right to Intervene—Action in Representative Capacity.**

The suit by the committee being in their capacity as representatives of the stockholders and the intervener's cause of action being against plaintiffs in their individual capacity and to obtain a personal judgment against them for his loss through their negligence and default, it was neither necessary nor proper for him to come into the case for the prosecution of his claim.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*Shook & Vander Hoeven* and *Coke & Coke,* for appellants.

*J. O. Terrell, J. C. Sullivan, Chas. W. Ogden,* and *W. H. Lipscomb,* for appellees.

NEILL, ASSOCIATE JUSTICE.—On April 28, 1897, Francis S. Bangs, Geo. H. Southard, D. W. McWilliams, Jos. M. Keating, W. J. Caesar (appellants), and C. W. Ogden, as a reorganization committee, brought this suit against the Yorkshire Investment and American Mortgage Company and Alfred Crebbin for specific performance of a certain contract mentioned in our conclusions of fact, or, in the alternative, to recover $28,947.63 alleged to have been paid by plaintiffs, as such committee, to defendants on said contract.

On October 4, 1897, the defendant answered by a number of special exceptions, a general and special denial, and specially plead that they had ever been ready and willing to perform their part of the agreement, and that their failure to fully perform it is due to the plaintiffs' failure and refusal to perform their part of the contract.

On March 20, 1901, D. Sullivan & Co. were granted leave to intervene, but on April 8, 1901, before he filed his petition, the plaintiffs, without Sullivan's knowledge, took a nonsuit, which was, on a motion of D. Sullivan—in which Ogden joined—on the 25th day of May, 1901, set aside and the cause reinstated. On the same day all the plaintiffs, except Ogden, orally moved a discontinuance, which motion was at the instance of Sullivan & Co. refused. On May 30, 1901, all the plaintiffs, except Ogden, filed a written motion in which they represented they would no further prosecute the suit, and prayed the court to enter a discontinuance on their behalf against the defendants. This motion was likewise denied.

On June 7, 1901, D. Sullivan filed his original petition of intervention against all the plaintiffs, except Ogden, and the defendants, in which he alleged, as an original shareholder and as assignee of another stockholder, he was interested in the subject matter of the litiagtion to the extent of $5700, which had been paid to the reorganization committee for the purpose of carrying out the scheme of reorganization under the contract with defendants; that plaintiffs were trustees of the fund paid them for the purpose of reorganization, which fund included the $5700 paid by him and his assignee, and it was their duty to preserve the same from misapporpriation and see that it was used for the purpose for which it was provided; that through the willful default and neglect of plaintiffs said trust fund or the principal part thereof had been wasted, it having been by them paid to defendants under the pretense that the payment was on account of the agreement to purchase the property for which the fund was created without plaintiffs having received anything of value therefor. That defendants received the money with full knowledge that it was a trust fund provided for the purpose of acquiring title by and for the reorganized company to the land—the object and end of contract and reorganization scheme between the parties; but that defendants had failed and refused to convey the land to the reorganized company or to refund any portion of the trust fund received by them. That the filing of this suit by plaintiffs was a pretense, and that it was never at any time their intention to prosecute it, or in any manner protect and enforce the rights of the beneficiaries of said trust fund; that the discontinuance of this suit by them was entered pursuant to a wrongful and fraudulent combination with defendants that plaintiffs would not further prosecute it. That by reason of the willful negligence and default of plaintiffs, and the wrongful and unlawful combination and conspiracy entered into between them and defendant Crebbin, all of said trust fund has been lost and wasted, and that thereby plaintiffs and defendants became liable to intervener for the amount of his interest in said trust fund, with interest, etc. The intervener prayed that plaintiffs be required by order of the court to render an account of all of said trust fund and what disposition had been made of the same and by whom, and upon

final hearing that intervener have judgment against plaintiffs and against defendants for the sum of $5700, with interest, etc.

(Note.—The plaintiffs against whom the petition of intervention is directed and who answer it are those only who are the appellants,— Ogden being excluded.)

On November 4, 1901, all the plaintiffs, except Ogden, without waiving their rights to the discontinuance and nonsuit theretofore claimed to have been entered and taken by them, but expressly insisting upon them, moved the court to strike out the plea of intervention upon the following grounds: (1) Because at the date it was filed the cause had been discontinued by them, and no cause was pending in which the petition of intervention could be filed. (2) Because if the effect of the order reinstating the cause was to bring them again into court, the order was erroneous, and they should not be deemed in court so that the plea of intervention should be filed against them. (3) Because the cause of action, if any, set out in the plea of intervention, did not show that intervenor was interested in the subject matter of the suit, and showed no cause of action against them which could be made the subject of intervention. And (4) because plaintiffs had sued in their representative capacity as the reorganization committee, and were not in court in their individual capacity, whereas the plea in intervention was filed against them as individuals. They prayed that the intervention be dismissed, and the cause stricken from the docket, as it had theretofore been dismissed and discontinued by them.

On the same day plaintiffs filed special exceptions, which are substantially the same as are embodied in their motion to strike out the intervener's plea of intervention. Then they answered the plea of intervention (1) by a general denial, (2) by plea of statute of limitation of two years, and (3) by the four years statute of limitations. On the same day said motion and the general and special exceptions were heard and overruled by the court, to which rulings appellants excepted. At the same time were heard defendants' general and special exceptions to plaintiffs' petition, and the court overruled the general exceptions, but sustained special exceptions as to the prayer for specific performance, but overruled them as to that part of the petition which seeks to recover back the purchase money paid in damages.

On January 14, 1902, the defendants amended their original answer, and on the same day filed their original answer to Sullivan's plea of intervention. They afterwards, on May 19, 1902, filed their second amended answer to plaintiffs' petition. Thereafter on the same day defendants presented to the trial court general and special exceptions contained in the second amended original answer to plaintiffs' petition, and also their general and special exceptions contained in the answer to the petition of intervention of D. Sullivan, all of which exceptions being heard by the court were overruled.

Thereafter on the same day the cause was called for trial. Whereupon the plaintiffs, except Ogden, declined to make any announcement,

but claimed that they had theretofore discontinued their suit, and further declined to read plaintiffs' original petition to the jury. Whereupon Chas. W. Ogden, for himself and in behalf of intervener D. Sullivan, prayed and obtained leave from the court to read said petition to the jury, and to proceed with plaintiffs' case, and that of the intervener; to which the five plaintiffs, who are appellants, objected upon the following grounds: (1) Because the suit had been dismissed before the filing of any intervention on the part of the intervener, and they had declined to further prosecute it; (2) because they had the right to control the litigation on the part of plaintiffs, and that plaintiff Ogden could not compel them to prosecute the suit after they had elected to abandon it; and (3) because Ogden could not alone prosecute said suit. The defendants joined said plaintiffs in these objections, which were overruled by the court, and plaintiff Ogden and intervener Sullivan were permitted to read the original petition of plaintiffs to the jury, and to introduce evidence thereunder, to which action of the court said plaintiffs excepted.

On May 22, 1902, the trial of the case resulted in a verdict in favor of the defendants mortgage company and Crebbin against all parties, and in favor of D. Sullivan against appellants for the sum of $5728, with interest thereon at 6 per cent per annum, from September 20, 1895. On which verdict judgment was rendered that plaintiffs, including Ogden and intervener Sullivan, take nothing by their suit against defendants mortgage company and Crebbin; and that intervener D. Sullivan have and recover of appellants the sum of $8019, with interest thereon from date of judgment at the rate of 6 per cent per annum; then follow instructions as to costs and execution. From this judgment the plaintiffs, Francis S. Bangs, George H. Southard, D. W. McWilliams, Jos. M. Keating and W. J. Caesar, have appealed.

*Conclusions of Fact.*—Prior to August 31, 1895, the Alamo Heights Land and Improvement Company, a domestic corporation, owned a considerable body of land near San Antonio, Texas, incumbered by three mortgages, held by the Yorkshire Investment and American Mortgage Company, aggregating something over $63,000. Prior to the fall of 1895, the Alamo Company being insolvent and the mortgages in default, certain of its stockholders, believing the land worth much more than the mortgage debts, requested plaintiffs to furnish a plan for reorganizing said company for the purpose of protecting its stockholders against the loss of said property at foreclosure sale under the mortgages. Accordingly plaintiffs, as a reorganization committee, undertook to reorganize the company for that purpose. To this end a written contract was entered into between plaintiffs, as a reorganization committee, such of the stockholders of the Alamo Company as should come into the reorganization, and the Franklin Trust Company, which fixed the rights, duties and liabilities of the respective parties, giving plaintiffs, as the reorganization committee, full power and authority, as

agents of the stockholders coming in under the agreement, to do any and every thing requested or necessary to carry out and effect the purpose and object of the reorganization scheme. And it was expressly agreed that the power conferred upon the committee might at any time be exercised by a majority of its members, the committee agreeing to use its best efforts to carry into effect the plan of reorganization; but it is expressly stipulated that no member of the committee shall be liable in any respect except for his own willful misconduct and default.

The reorganization committee in pursuance of the plan entered into negotiations and effected a contract with the mortgage company whereby it was agreed that the company should foreclose its several mortgages on the property, and at the foreclosure sale that either the company or its agent, Alfred Crebbin, should purchase it and convey it to the new company to be created by the reorganization committee, upon such company's paying the full mortgage debt and cost of foreclosure; the purchase money in excess of $45,000 to be paid in cash, and for the $45,000 the mortgage company should accept the bond, to run for five years, of the new company, secured by a proper mortgage on said property. In accordance with the agreement the property was sold under the mortgages and bought in by the defendant Crebbin on September 3, 1895, for himself, subject to the agreement between plaintiffs and the mortgage company, plaintiffs, as such reorganization committee, paying the costs of the foreclosure. And afterwards, on September 20, 1895, they paid the mortgage company $18,070.67, that being the full amount of the indebtedness due the company above $45,000. During the year 1896 the committee, relying upon its contract with defendants, paid the mortgage company the following amounts: On March 15th, $1806.50, being interest on the $45,000 for which the mortgage bond of the new company was to be given, at the rate agreed upon, from date of sale to March 1, 1896; on April 6th, $1460.90 for accumulated taxes on said property; on September 23d, $1803.50, interest on said $45,000 from March 1 to September 1, 1896; on December 18, $596, taxes on said property for the year 1896, and also $100 to defendants' attorney for certain legal services performed by him in connection with the title to a part of said property. And on January 27, 1897, $110 insurance on a hotel situated on the property. Which payments aggregate $23,-947.63. Of this money $5700 was paid the reorganization committee by the intervener, Sullivan, and Chas. W. Ogden as original stockholders in the Alamo Heights Land and Improvement Company for the purpose of carrying out the reorganization scheme under the agreement and contract referred to. Ogden afterwards, for value, assigned his interest in the fund and the rights growing out of the contract under which it was paid, to the intervener.

The reorganization committee caused to be incorporated the new company contemplated by the reorganization scheme, but the property was never conveyed to it, nor were the mortgage and bond of such company ever executed for the $45,000 of the purchase money.

Plaintiffs and Alfred Crebbin had not discussed or agreed upon the trustee who should be named in the mortgage or deed of trust which was to be given to secure the $45,000 purchase money, nor had all the terms and provisions to be incorporated in the instrument been reached prior to the 20th of September, 1895, when the cash payment was made by plaintiffs to Crebbin. Subsequent to that date these matters were taken up and discussed by plaintiffs and Crebbin, but they did not fully agree upon them. And therefore the conveyance of the property was never executed by Crebbin to either the new mortgage company or plaintiffs.

As between the intervener and defendants we find that it was not the fault of Crebbin that an agreement upon all matters material to the conveyance of the property was not reached, but that the failure to agree upon the material matters touching such conveyance, and the mortgage contemplated to secure the payment of the purchase money, was due to the fault of the reorganization committee. But as to whether this fault can be attributed to each member of the committee, and if so, is such as to amount to willful misconduct on his part, we do not, in view of the conclusions of law reached by us, deem it necessary or proper for us to find.

*Conclusions of Law.*—The first, second and third assignments are directed to the action of the court in setting aside the order of non-suit and in refusing to allow the appellants to discontinue their action. If the suit had been brought by appellants alone in their individual capacity upon a demand in which they only were personally interested, it would seem that they, or any of them, could at any time, during the pendency of the suit before the jury retired, take a nonsuit; though they could not thereby prejudice the right of the adverse parties, or either of them, to be heard on their claim for affirmative relief, if any were interposed. Rev. Stats., art. 1301. But this suit was not instituted nor prosecuted by appellants in such capacity for such purpose. It was brought by them as a committee of reorganization for such of the stockholders of the old corporation as had entered into and complied with the agreement and scheme for reorganizing and preventing a sacrifice of the property at foreclosure sale by having it bought in and conveyed to a new company. Plaintiffs' relation to such stockholders was fiduciary, and, as is apparent from the face of their petition, it was in discharge of the duty arising from such relation the suit was brought. Having voluntarily assumed such relation, plaintiffs, as a committee of such stockholders, were legally as well as equitably bound to faithfully discharge such duty for the promotion of the ends of and objects of the committees' appointment. Marry v. Beard, 102 N. Y., 505; Gould v. Siney, 9 N. Y. Supp., 822.

From this it follows that if the matters alleged against the defendants in plaintiffs' petition were true, it was their bounden duty as trustees and agents of such stockholders to prosecute this suit in good faith to final judgment, to the end that specific performance of the con-

tract they had made in behalf of and in the interest of the stockholders might be enforced, or in the event such relief could not be obtained, that they might obtain in behalf of the beneficiaries such other relief as they were entitled to. If then, plaintiffs were not in the bona fide discharge of this duty, and did not intend to perform it, but were, as is alleged in the intervener's motion to set aside the nonsuit, in collusion with the defendants for the fraudulent purpose of defrauding their cestui que trusts of their rights in the subject matter of the litigation, and in pursuance of such fraudulent purpose entered a discontinuance of the action, we think that it would be within the discretion of a court of equity, at the instance of a stockholder who had obtained leave to intervene, upon motion showing his interest in the subject matter and such fraudulent collusion and its purpose, to set aside the nonsuit and allow him to intervene in order to protect his own interest. And other stockholders alike interested might, with leave of the court, have joined him. We have reached this conclusion from the analogy of the plaintiffs as a reorganization committee to a board of directors of a corporation, for plaintiffs, as such committee, were practically the directors of the new company organized by them for carrying over the property. When a corporation will not prosecute a suit in its corporate capacity to vindicate a wrong done it, a court of equity may permit a stockholder to intervene for the purpose of protecting his own interest. Bates' Fed. Eq. Proced., sec. 632.

In this case, as is shown by his petition, the purpose of the intervener was to protect his interest alone, and not as well that of those similarly situated and alike interested. In view of this, the intervention did not deprive the plaintiffs of the right to take a nonsuit subject only to the right of intervener to be heard on his claim for affirmative relief without being prejudiced by plaintiffs' exercise of such right. Nor did the fact that Ogden, as one of the plaintiffs, refused to join them in taking the nonsuit, but resisted them in their efforts to do so, deprive them of this right, subject to such limitation; for the agreement between the stockholders and the reorganization committee expressly provided that the power conferred upon the latter, which included the authority at their discretion to institute, prosecute, compromise and dismiss suits, might at any time be exercised by a majority of its members. The stockholders did not by the agreement, or in any other manner, clothe Ogden with the authority, upon any contingency, to prosecute the suit alone in their behalf. He had parted with his interest in the subject matter of the litigation; and when he refused to abide the action of the majority, he had no right to interfere with the conduct of the suit, save as an attorney for the intervener for the purpose of protecting his interst in the matter in controversy—a part of which he had transferred to him. Even had the plaintiffs failed to appear, the proper practice would have been for the court to have dismissed the original suit for want of prosecution. But having appeared, they had the right to dismiss their suit, over the protest of the

intervener, leaving the petition of intervention pending as against the parties, defendants as well as plaintiffs, from whom the intervener sought affirmative relief. Harris v. Schlinke, 95 Texas, 88, 65 S. W. Rep., 172. The action of the court in refusing to permit them to take a nonsuit, subject to the right of intervener to be heard on his petition, placed them in a more unfavorable attitude than they would have been had they failed to appear at all. This is demonstrated by the case being tried as between them and defendants, over the former's protest, without their participation, and a final judgment entered against them in favor of the defendants, which, if allowed to stand, forever concludes plaintiffs as well as those whose rights and interests they represent, from obtaining any relief against the defendants, however meritorious their cause of action may have been. For the intervener to recover against the plaintiffs it was necessary for him to fail in his action against the defendants; and to do this, it was essential to show that plaintiffs had no cause of action against either of them. For had plaintiffs recovered against defendants, intervener's action against them, as well as against plaintiffs, must necessarily have fallen to the ground. Thus it is shown that it was to the common interest of the intervener and defendants to show that the latter were not at fault, but that the blame for the failure of the reorganization scheme lay alone at the door of plaintiffs. This may have been easily shown while plaintiffs were standing on their right to dismiss their action, and in doing so were not, and could not be, participants in the trial.

Our conclusion that the court erred in refusing to permit the plaintiffs to take a nonsuit, subject to the right of the intervener to prosecute his suit for affirmative relief, necessarily requires a reversal of the judgment against them in favor of the defendants; and might, if the intervener had such cause of action against appellants as could be prosecuted by intervention in this case, also require a reversal of the judgment in favor of the intervener.

This brings us to the question raised by the fifth and sixth assignment of error: Does the petition of the intervener disclose such an interest in the subject matter of the suit as constitutes a cause of action that can be set up and prosecuted by intervention? This question does not involve the matters alleged by intervener against the defendants, or either of them; but is directed solely to the cause of action alleged against appellants.

To confer upon a party the right to intervene in a pending suit, he must have such an interest in the subject matter of litigation as makes it necessary or proper for him to come in to the case for the protection of such right. Stansell v. Fleming, 81 Texas, 295. In other words, his interest in the subject matter involved must be such that, had the original action never been commenced, and the intervener had brought the suit in his own name as plaintiff, he would have the right to recover to the extent, at least, of a part of the relief sought; or had the action

been first brought against him, as a defendant, he would be able to defeat a recovery, in part at least. Pool v. Sanford, 52 Texas, 621.

The original suit was brought by plaintiffs—not as individuals, but in their representative capacity as a reorganization committee—to enforce specific performance on the part of the defendants of a contract between them and such committee for the conveyance of land described in the original petition, or, in event such relief could not be obtained, to recover the money paid and expended by the committee in carrying out such agreement. The relief sought was not for them as individuals, but as a committee representing others, who are to receive the benefit of such judgment. Otherwise than as such committee, the plaintiffs did not come into court with their suit. As individuals, they had no standing and could obtain nothing there for themselves. Their standing as a committee before the court could not be so changed by it as to convert them into individuals for the purpose of allowing a party to intervene, set up a cause of action against them as such, and obtain a personal judgment against each of them.

The intervener's cause of action was against appellants—not in their capacity as a committee, but, as is shown from our statement of the case, brought against them as individuals to recover an interest of $5700 in a trust fund alleged to have been lost by the willful neglect and default of each. And it is a personal judgment against each that was recovered.

The loss of a trust fund, in which intervener had an interest, by the willful negligence and default of appellants, by whom it was received as a committee for the purpose of carrying out the reorganization agreement, while it may furnish a cause of action in favor of intervener against each member of the committee guilty of such willful neglect, is not the subject matter of the suit brought by the plaintiffs against the defendants. It is an independent cause of action, involving subject matter distinct and entirely foreign to that involved in the original suit, upon which the intervener could have brought and prosecuted an original suit to judgment without regard to the result or disposition of the suit between plaintiffs and defendants. It was neither necessary nor proper for him to come into this case for the prosecution of any right or interest which his petition discloses that he had against the appellants.

We are therefore of the opinion that the petition of intervention, as against appellants, should have been dismissed upon their motion, and that, as to them, the court erred in not sustaining the exceptions to it.

These conclusions render it unnecessary for us to discuss or pass upon the remaining assignments of error, and require us to reverse the judgment of the court below between all the parties except as between the intervener Sullivan and the defendants, and to here render such judgment as the District Court should have rendered. Accordingly the judgment in favor of defendants, Yorkshire Investment and American Mortgage Company and Alfred Crebbin against the plaintiffs, and that

in favor of intervener, Sullivan, against appellants, will be set aside, and judgment here rendered dismissing plaintiffs' action and the intervener's petition of intervention, in so far as it affects appellants, without prejud.ce to his right to bring and prosecute his cause of action, if any he has against them, in any court having jurisdiction of the subject matter and of their persons. The judgment in favor of the defendants against the intervener, as it is not complained of by any party, will be affirmed.

All costs of suit incurred in the court below up to and including April 8, 1901, will be taxed against the plaintiffs, and all costs incurred since that date in the District Court as well as on this appeal will be assessed against the intervener, D. Sullivan.

*Reversed and rendered.*

Writ of error refused.