[Civil No. 3915.   Filed February 7, 1938.]

[75 Pac. (2d) 1033.]

FRANK G. MILLER, Appellant, v. CITY OF PHOENIX, a Municipal Corporation, and BEN PASQUALETTI, Jr., Appellees.

Mr. William C. Eliot, for Appellant.

Mr. I. A. Jennings, City Attorney, Mr. Hess Seaman and Mr. Richard F. Harless, his Assistants, for Appellee.

LOCKWOOD, J.—The City of Phoenix, hereinafter called plaintiff, brought suit against Ben Pasqualetti, hereinafter called defendant, under the provisions of sections 4385–4390, Revised Code, 1928, commonly known as the Declaratory Judgment Act, to secure the judgment of the court as to the validity of the following agreement between plaintiff and defendant:

"Agreement

"This Agreement . . . Witnesseth: . . .

"I

"That second party shall collect all first class garbage from all places except private residences within that section of the City of Phoenix, lying and being between Seventh Street and Seventh Avenue, Van Buren Street and Jackson Street.

"II

"That all collections of garbage shall be made under the supervision of the Superintendent of Streets and his instructions to the second party shall be carried out by said second party.

"III

"That second party shall dispose of all garbage of the second class as collected by the City of Phoenix.

"IV

"All garbage whether first or second class shall be disposed of in accordance with the existing contract between the City of Phoenix and the Phoenix Stock Feeding Company, dated the 30th of September, 1931, which said contract terminates at midnight on the 21st day of September, 1936. After the termination of said contract all garbage to be disposed of by second party in a sanitary manner without any additional or further expense or liability of any kind or character to first party.

"V

"Second party shall furnish bond in the amount of Five Thousand Dollars ($5,000.00) to guarantee the faithful performance of his contract.

"VI

"First party shall pay to second party for the above mentioned service the sum of Two Thousand Six Hundred and Forty Dollars ($2640.00) per annum, payments to be made on a monthly basis of Two Hundred Twenty Dollars $200.00 per month."

Thereafter Frank G. Miller, hereinafter called intervener, filed his petition asking for leave either to intervene or that the court make him a party defendant. He stated the grounds for his petition as follows: After the making of the contract between plain-

tiff and defendant above set forth, and relying thereon, he entered into an agreement with defendant by the terms of which a corporation was to be organized by intervener and defendant, each to own half of its stock, and after the incorporation such corporation should have the management and disposal of all No. 1 garbage collected by defendant under his contract as aforesaid, and should raise and sell hogs on the open market, intervener to furnish the necessary pens and breeding livestock to carry out the purposes of the corporation, and as many feeder hogs as were necessary to dispose of the garbage aforesaid. He alleged that by reason of the contract between himself and defendant he had an interest in the subject-matter of the action, and therefore a right to intervene in the suit between defendant and plaintiff aforesaid, or to be brought in as a party defendant. The court finally refused to allow either the intervention or the bringing in of intervener as a defendant, and from the order refusing he has appealed.

His claim is based upon the provisions of sections 3793 and 4390, Revised Code 1928, which read as follows:

"§ 3793. *Right of intervention; proceedings to intervene.* Any person who has an interest in the subject-matter of the action which can be affected by the judgment, may, on leave of the court, intervene in such action or proceeding at any time before the trial of the issues of facts. The person desiring to intervene shall make and serve upon the plaintiff and the defendant, if he has appeared in the action, a motion in writing praying leave to intervene and stating briefly the grounds for the proposed intervention, accompanied by a copy of his proposed pleading."

"§ 4390. *Persons who are necessary parties.* When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the judgment, and no judgment shall prejudice the rights of persons not parties to the pro-

ceeding. In a proceeding involving the validity of a municipal ordinance or franchise, such municipality shall be made a party, and if a statute, ordinance or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding.''

It will be seen by these sections that the right of intervention applies only to those who have ''an interest in the subject-matter of the action which can be affected by the judgment,'' and the question for our determination is what is meant by those words.

Counsel for intervener has cited to us but one case, that of *Barnes* v. *Shattuck*, 13 Ariz. 338, 114 Pac. 952, 954, which he claims sustains his contention. In that case the plaintiff alleged that Barnes & Martin had entered into a contract with the defendants to act as their attorneys in certain litigation, by the terms of which they were to receive from defendants one-fourth of all money or property received by the latter as a result of the litigation; that they fully performed their contract and that the litigation had been settled, in pursuance of which settlement the defendants had received a large sum of money and considerable capital stock of a mining company; that by reason thereof they became entitled to one-fourth of such money and stock, and that plaintiff had become the owner of the interest of Barnes & Martin as aforesaid. Thereafter a plea in intervention was filed, alleging that certain other attorneys had been employed by Barnes & Martin to assist in the litigation, for which Barnes & Martin promised these latter attorneys that they would share with them any fee that they might receive from defendants. The prayer of the plaintiff was for an accounting by the defendants of the money and stock received by them, and that they may be decreed to pay plaintiff one-fourth of the money and assign her one-fourth of the stock. The prayer of the interveners was for an accounting by both plaintiff and

defendants, and that interveners be decreed the owners of one-third the money and stock which constituted the contingent fee. The court, in passing on the question as to the right of intervention, said:

"The appellant must have instituted her action upon the theory that the fee of Barnes & Martin consisted of an equitable interest in the proceeds of the compromised litigation to the extent of one-fourth of the money and property received by the defendants thereunder. Under no other theory than that of an equitable assignment might she invoke an accounting and a decree requiring the defendants to transfer and assign to her one-fourth of all the stock in said corporation received by them. The interveners filed their petition, reciting an agreement between Barnes & Martin and Street & Alexander, by the terms of which the latter, in consideration of professional services rendered in said mining litigation, were to receive one-third of the share of Barnes & Martin in the proceeds of such litigation, or any compromise thereof, whether in money or property. If Barnes & Martin were possessed of an equitable interest in a fixed portion of the proceeds of the compromise, and, by virtue of their agreement, Street & Alexander became the owners of, or entitled to, an equitable interest in Barnes & Martin's share, then clearly they were possessed of an interest in the subject-matter of the action of such a direct and immediate character that 'they would either gain or lose by the direct legal effect and operation of the judgment,' and, under any construction which may be given the statute, were entitled to intervene."

We think this is undoubtedly the correct rule under the facts. The litigation was over the equitable ownership of certain specified money and stock, plaintiff and interveners each claiming ownership of part of the particular personal property involved in the action. It is obvious under such circumstances that the "subject-matter of the action" was the particular money and stock, and that the interveners claiming an

interest therein did, in the language of the statute, have ''an interest in the subject-matter of the action which can be affected by the judgment.''

■ The situation presented by the present case, however, is very different. The contract between plaintiff and defendant was obviously a contract for personal services, for which defendant was to be paid a specific amount by the plaintiff. The suit brought was to determine whether such contract was valid or not. Specific performance thereof could not have been claimed by plaintiff, its only remedy for a breach, in case the contract was valid, being an action for damages. 25 R. C. L., p. 303 et seq.

■■ Intervener bases his claim on the theory that, as a result of the personal services to be performed by defendant, the latter would come into possession of certain properties in which he had agreed to give intervener an interest. The ''subject-matter'' of the litigation between plaintiff and defendant was not the garbage which intervener claims he was entitled to and which he would lose in case the contract between plaintiff and defendant was not carried out, but the validity of a contract for personal services. Intervener had no legal interest whatever in such contract for he was neither a party nor a privy thereto. Any judgment that the contract was either valid or void would have no direct effect upon his rights under his contract with defendant. Even were the contract a valid one, since the only remedy for a breach thereof was an action for damages, it would follow that, if intervener had any right of action against defendant for a breach of his contract with the latter, his remedy could not be specific performance, but damages at the most. This right would not be affected by a judgment in the suit between plaintiff and defendant.

We have been unable, after considerable research, to find any case on all fours with the facts of the pres-

ent one, but we find a number of general statements. In the case of *Willard* v. *Tayloe,* 8 Wall. 557, 571, 75 U. S. 557, 19 L. Ed. 501, the court says:

"The general rule is, that the parties to the contract are the only proper parties to the suit for its performance, and, except in the case of an assignment of the entire contract, there must be some special circumstances to authorize a departure from the rule.'"

In the case of *Bangs* v. *Sullivan,* 33 Tex. Civ. App. 30, 73 S. W. 74, 78, the question of the right of intervention is discussed, and the court says:

"To confer upon a party the right to intervene in a pending suit, he must have such an interest in the subject-matter of litigation as makes it necessary or proper for him to come into the case for the protection of such right. *Stansell* v. *Fleming,* 81 Tex. [294] 295, 16 S. W. 1033. In other words, his interest in the subject-matter involved must be such that had the original action never been commenced, and the intervener had brought the suit in his own name as plaintiff, he would have the right to recover, to the extent, at least, of a part of the relief sought; or, had the action been first brought against him as a defendant, he would be able to defeat a recovery, in part, at least. *Pool* v. *Sanford,* 52 Tex. 621."

In the case of *Tombler* v. *Sumpter,* 97 Ark. 480, 134 S. W. 967, 969, the right of intervention again came up, and the court used the following language:

"Where the possession of the property is not sought by the proceeding, but simply the performance of a contract which it is alleged was made relative thereto, strangers to the contract itself are not necessary parties to such suit. In the case of *Willard* v. *Tayloe,* 8 Wall. [557] 571, 19 L. Ed. 501, the Supreme Court of the United States says: 'The general rule is that the parties to the contract are the only proper parties to the suit for its performance.' "

The case of *Wightman* v. *Evanston Yaryan Co.,* 217 Ill. 371, 75 N. E. 502, 504, 108 Am. St. Rep. 258, 3

Ann. Cas. 1089, seems to come nearer in point of fact to the present case than any other we have discovered. In that case the Northern Trust Company had brought an action to foreclose a mortgage on certain property belonging to the Yaryan Company. The interveners had certain contracts with the company requiring the latter to furnish them light and heat, and, in case of a foreclosure by virtue of the mortgage, they would have lost their rights under their contract with the company. The court, in reviewing the authorities, quoted from several cases cited in the opinion, in the following language:

" 'The interest mentioned in the statute which entitles a person to intervene in a suit between other parties must be in the matter in litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment.' . . . 'This, we suppose, must be a direct interest, by which the intervening party is to obtain immediate gain or suffer loss by the judgment which may be rendered between the original parties; otherwise, the strange anomaly would be introduced into our jurisprudence of suffering an accumulation of suits in all instances where doubts might be entertained or enter into the imagination of subsequent plaintiffs that the defendant against whom a previous action was under prosecution might not have property sufficient to discharge all his debts, for, as the first judgment obtained might give a preference to the person who should obtain it, all subsequent suitors, down to the last, would have the indirect interest in defeating the action of the first.' . . . 'The interest which entitles a party to intervene in an action between other parties must be in the matter in litigation in a suit as originally brought, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal effect of the judgment therein.' "

■■ The rule laid down is obviously correct and necessary for the orderly disposition of the business

of the court. If intervener may claim the right to appear in a suit to determine the validity of the contract for the disposal of the garbage, on the grounds that he has a contract with the defendant to purchase it, then a packing company which had agreed with intervener to buy some of the pigs which were to be fed on the garbage might also intervene on the ground that its rights were affected by the judgment, and the wholesaler who had a contract for purchase from the packing company of some of the pork thus produced might do likewise, and so *ad infinitum*. We hold, therefore, that the interest which an intervener must have is a direct and immediate interest in the case, so that the judgment to be rendered would have a direct and legal effect upon his rights, and not merely a possible and contingent equitable effect. The same rule applies to the right of an intervener to be brought in as a party defendant, so that he was neither a necessary nor a proper party to the action.

The order appealed from is affirmed.

McALISTER, C. J., and ROSS, J., concur.