**Stephen C. CRANE, et al., Plaintiffs,**

v.

**The STATE OF TEXAS, et al., Defendants.**

**Civ. A. No. CA-3-80-0978-G.**

United States District Court,
N. D. Texas,
Dallas Division.

March 11, 1982.

Douglas R. Larson, Johnston & Larson, Peter Lesser, Dallas, Tex., for American Civil Liberties Union.

Gerald C. Carruth, Asst. Atty. Gen., Austin, Tex., for intervenor.

Chas. L. Baldree, Sue L. LaGarde, J. Steven Bush, Asst. Dist. Attys., Federal Litigation Section, Dallas, Tex., for Henry Wade, Murdoch and State of Tex.

Earl Luna, Law Offices of Earl Luna, Dallas, Tex., for Dallas County, Ben Ellis, John Orvis, Mike Schwille, Harold Entz, Tom Price, Berlaind Brashear and Chuck Miller.

Joseph G. Werner, Asst. City Atty., Dallas, Tex., for Perez, Woods, City of Dallas: (Dismissed After Trial).

MEMORANDUM OPINION

PATRICK E. HIGGINBOTHAM, District Judge.

I. *Factual Background*

On April 21, 1980, Stephen C. Crane was arrested at his office and jailed pursuant to

a misdemeanor capias alleging that he knowingly exhibited obscene film at the Crystal Adult Theater in Dallas. It later developed that Crane was arrested only because a lawyer with whom Crane shares office space listed him, without his knowledge or consent, as one of three "initial directors" in the 1979 Articles of Incorporation of a Texas corporation known as the Crystal Theater. The charges against Crane were dismissed for insufficient evidence on the state's motion. Crane filed suit charging that his arrest was illegal and was the by-product of an illegal system of misdemeanor arrests. The court bifurcated trial into a consideration of whether the challenged practices were legal and whether Crane was entitled to damages.

The system which was used in Dallas County for issuing misdemeanor capias at the time Stephen Crane was arrested was described in detail in an earlier order dealing with the legality of the system. Memorandum Order, No. CA-3-80-0978-G (Nov. 30, 1981). Briefly, under this system the county clerk's office would issue misdemeanor capias without a probable cause determination. Prior to issuing misdemeanor capias, assistant county clerks would perform the clerical task of typing information from a form, labeled an affidavit, which was presented by an assistant district attorney from the Criminal District Attorney's office.

A jury trial was conducted to determine whether Crane was entitled to money damages. The jury determined that Crane was entitled to $15,000 for injuries caused by his arrest and to $25,000 for injuries caused by his being charged with promoting obscenity. Crane sought damages from a number of defendants including the County Clerk and the three city police officers who arrested him, but the jury only awarded damages against Dallas County and Henry Wade, the Criminal District Attorney of Dallas County. The liability of Henry Wade is discussed in Part IV of this memorandum order.

This court must decide whether the county is liable because the practices found to be illegal were a "county policy or custom." In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court concluded that a local government unit could be sued as a "person" under 42 U.S.C. § 1983 if that governmental entity or an official representing that entity maintains or practices an unlawful or unconstitutional custom or policy which causes the deprivation of individual rights. Resolution of the issue requires a consideration of (1) the relationship between the county and the state and (2) the nature of the office of those responsible for the prosecutorial functions.

## II. The Nature of Texas Counties and Their Relationship to the State

### A. The Creation and Structure of Counties

The lack of local control over counties is evidenced in the state's power to create and dissolve them and that power's constitutional provenance. Since the 1845 constitution, the legislature has had the power to create and dissolve counties within certain constitutional guidelines. Tex.Const. art. 9, § 1. Counties, unlike other governmental entities such as hospital districts, cannot be created by local initiative.[1] Tex.Const. art. 9, § 4.

The structure of Texas county government has changed little over the 150 years since the Republic's first constitution. This lack of change is due largely to the fact that the structure of county government is fixed in the constitution and cannot be changed without a constitutional amendment. The inflexibility of county governmental structure is recognized in the interpretive commentary to Tex.Const. art. 5, § 18:

The close restrictions placed in the constitution relative to counties made fundamental changes in the organization of

---

1. In *Laje v. R. E. Thomason*, 665 F.2d 724 (5th Cir. 1982), the fifth circuit emphasized that a hospital district was created by local initiative

in deciding that the district was not entitled to eleventh amendment immunity.

most counties almost impossible. In 1930 there was initiated a movement for county home rule to overcome this inflexible control. A constitutional amendment providing for county home rule was passed by the legislature in 1933 and approved by the voters the same year. (See Art. 9, Sec. 3).

Because the home rule amendment was repealed in 1969, counties remain with a constitutionally fixed governmental structure.

The constitutional source of its structure also reduces the control of the local citizenry over county government. An example of the lack of local control over the structure of local county government is found in *Moncrief v. Gurley*, 609 S.W.2d 863 (Tex. Civ.App.—Fort Worth 1980, writ ref'd n. r. e.), which involved the question of whether the voters of the county could abolish the office of County Treasurer. The state legislature enacted a statute providing for an election in Tarrant County concerning consolidation of the offices of County Treasurer and County Auditor. Based on its reading of several constitutional provisions, the court concluded that the County Treasurer was a "constitutional officer" and as such his office could not be abolished except by constitutional amendment. Thus, even with legislative approval, the citizens of a county are not free to choose its governmental structure because constitutional amendments require statewide electoral approval. By way of contrast, the structure of city government is not constitutionally fixed and can be changed by amendment of the city's charter. Such amendments require only *local* electoral approval and legislative approval. This is so with the several types of cities under Texas government. Cities with greater than 5,000 inhabitants can adopt a "home rule" charter which provides them with certain enumerated powers, Tex.Rev.Civ.Stat.Ann. arts. 1165–1182 (Vernon 1982), or they can adopt an individualized charter. Either type of charter is essentially a contract between the state and city outlining the city's powers in broad terms. There are also some small cities (usually with a population of less than 5,000) which are known as "general law

cities" and whose powers are more restricted. By statute providing for "home rule" by cities, they have the power to create a "commission, aldermanic, or other form of government; [and to create] offices, the manner and mode of selecting officers and prescribing their qualifications, duties, compensation and tenure of office." Tex.Rev. Civ.Stat.Ann. art. 1175 (Vernon 1982).

I turn now to the responsibilities of county officials, whether elected or appointed, how vacancies are filled, how they are compensated, and how such officers can be removed.

### B. The Duality of Texas Counties and County Officers

Counties in Texas have dual functions. They serve as administrative arms of the state, and they perform functions of local interest as well. County officers reflect this duality.

### 1. County Officials Responsible for the Prosecutorial Function

### a. The County Commissioners Court: The County Commissioners and the County Judge

Tex.Const. art. 5, § 15 provides for the office of County Judge: "...[T]here shall be elected in each county, by the qualified voters, a County Judge, who ... shall hold his office for four years ... [and] shall receive such compensation for his services such fees and prerequisites as may be prescribed by law." The County Judge presides over the principal governing body of the County Commissioners Court.

> ... Each county shall ... be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business as is conferred by the Constitution and the laws of the State, or may hereafter be prescribed.

Texas Const. art. 5, § 18. The County Judge also has the responsibility of supervising local and state elections.

Many of the duties of the County Commissioners Court, which is the chief administrative body in the county, are prescribed in Tex.Rev.Civ.Stat.Ann. art. 2351. These duties can be summarized as follows:

1. Lay off the county into precincts for the purpose of election of justices of the peace and commissioners;

2. Establish, repair and exercise general control over contract to sell roads, highways, bridges, ferries, and airports and to subterranean waters;

3. Administer lands granted by state to county for education or schools;

4. Audit and settle all accounts against the county and direct their payment;

5. Provide for support and burial of paupers and for the support of the emotionally disturbed and mentally retarded;

6. Assist the federal government in the administration of food stamp and subsidized housing programs;

7. Provide and keep in repair courthouses, jails and all necessary public buildings;

8. Provide seals required by law for the county and district courts;

9. Punish contempts with small fines and jail terms up to 24 hours;

10. Issue all notices, citations, writs and process necessary to execute its powers; and

11. Such court shall have all such other powers and jurisdiction and shall perform all such other duties, as are now or hereafter prescribed by law.

Tex.Civ.Stat.Ann. art. 2351 (Vernon 1982).

As will be discussed below in relation to the dual nature of county government, the powers which have been granted the county's administrative body have been narrowly construed.

The other duties of the Commissioners Court include approval of the county budget, setting the property tax rate within constitutional and statutory limits, Tex. Const. art. 8, § 9 (Vernon 1982), and collecting those taxes for both local and state purposes. The Commissioners Court is also empowered to fill vacancies in other offices including that of County Clerk, Tex.Const. art. 5, § 20, County Attorney, District Attorney or Criminal District Attorney, Tex. Const. art. 5, § 21. If there is a vacancy in the office of County Judge, the commissioners fill this vacancy, Tex.Const. art. 5, § 21, and if one of the commissioner's posts becomes vacant, the County Judge is empowered to fill it. Tex.Civ.Stat.Ann. art. 2341 (Vernon 1982). In order to ensure that the commissioners and the County Judge fulfill their duties, they are required to take an oath and provide a bond, which is payable to the County Treasurer. Tex.Rev.Civ.Stat. Ann. arts. 2340, 1928 (Vernon 1982). The County Judge is elected by all the voters of the county, Tex.Const. art. 5, § 15; Tex. Stat.Ann. art. 1927, and the commissioners are elected by the voters of their respective precincts, Tex.Const. art. 5, § 18, Tex.Rev. Civ.Stat.Ann. art. 2339 (Vernon 1982). The County Judge and the Commissioners can be suspended from office for "incompetency," Tex.Rev.Civ.Stat.Ann. art. 5972 (Vernon 1982) or "official misconduct," *id.* art. 5973, by a state district court judge. *Id.* art. 5982. They can be removed from office for the same reasons after a formal complaint is filed and a trial is conducted. *Id.* arts. 5970, 5976–82. The statutes contemplate a trial to a jury over which a district court judge presides. *Id.* These procedures also govern the suspension and removal of other officers such as the County Clerk and statutory county judges. In contrast, officers in cities with home rule and in cities with charters are removed after a trial before the city's mayor and aldermen. *Id.* arts. 5992–5993. Commissioners are paid a salary out of the county's Road and Bridge and General Funds, *id.* art. 2350, or out of the Officer's Salary Fund. *Id.* art. 3912e, § 5. Revenues for the Officer's Salary Fund are generated by charging fees for the various services performed by officers such as the County Clerk and County Attorney (e.g., a fee is charged by the clerk for

recording deeds and the state pays fees to officers who assist it in criminal prosecutions). The salary of the County Judge is also paid out of this fund. *Id.* The legislature has the power to appropriate money to these funds to supplement the revenues generated by fee collection. *Id.* art. 3912e, § 6.

### b. *The Criminal District Attorney*

Three types of attorneys are assigned tasks in Texas government. This case concerns the Criminal District Attorney of Dallas County, but it should be remembered that county attorneys perform essentially the same tasks as Criminal District Attorneys. The primary task of a Criminal District Attorney is to represent the state in criminal and civil matters. He is almost wholly "a judicial officer of the state and has very little to do with the administration of the county." H. G. James and I. Stewart, *County Government in Texas* 42 (2d ed. 1925). He does, however, perform certain tasks for the county government. He assists the county with tax collection, Tex. Tax.-Gen.Ann. § 6.30 (Vernon Pam.1981), represents county officials and employees in suits involving acts they performed as part of their public duties, *id.* art. 332c, and gives advice to county officers under certain circumstances. *Id.* art. 334. (This provision is discussed in relation to the claimed individual liability of the District Attorney). It is not, however, one of the prescribed legal duties of the county or criminal district attorney "to represent the county in its general legal business or the conduct of ordinary civil actions." *Hill Farm, Inc. v. Hill County*, 425 S.W.2d 414, 417 (Tex.Civ. App.—Waco, 1968), *aff'd on other grounds*, 436 S.W.2d 320 (Tex.1969).

The Criminal District Attorney must file a bond to insure that he will properly perform these duties. His bond, unlike that of the commissioners, County Judge, or County Clerk, is payable to the governor rather than the County Treasurer. Tex.Rev.Civ. Stat.Ann. art. 326k–1 (Vernon 1982).

Criminal District Attorneys are elected by the voters of the county. Tex.Rev.Civ. Stat. art. 1926–27. If the office of Criminal District Attorney becomes vacant, the County Commissioners Court is empowered to fill the vacancy until the next election. Tex.Const. art. 5, § 21. In some instances, the Criminal District Attorney receives a small salary directly from the state. The Criminal District Attorney of Dallas County receives $500 per annum from the state, Tex.Rev.Civ.Stat.Ann. art. 1926–27, § 4 (Vernon 1982), but the primary source of his salary is from the fees paid into the County's Officer's Salary Fund. *Id.* arts. 3912e, § 5. As noted, the fees that go into this fund are for work the Criminal District Attorney performs in prosecuting criminal cases. Tex.Code Crim.Proc. arts. 1020–35 (Vernon 1982).

Until recently, the suspension and removal of Criminal District Attorneys was governed by the same procedures that controlled the suspension and removal of the County Judge, Commissioners, Clerk and other officers. Tex.Rev.Civ.Stat.Ann. arts. 5970–5989 (Vernon 1982). In 1979 the legislature created a centralized agency of the judicial department of state government with responsibility to supervise the operation of prosecuting (Criminal District, County and District) attorney's offices. *Id.* art. 332d. The Prosecutor's Council has nine members. Four are appointed by the governor and five are elected by the state's prosecuting attorneys. *Id.* art. 332d, § 3. The Council serves to aid the administration of prosecuting attorneys' offices. It is also empowered to "accept and investigate complaints of prosecuting attorney incompetency and misconduct." *Id.* art. 332d, § 8(4). In *McInnis v. State*, 603 S.W.2d 179 (Tex. 1980), the Texas Supreme Court contrasted the general suspension and removal procedures in Articles 5970–86 to those in Article 332d:

Art. 5970, *et seq.*, including Art. 5986, apply to "All district and county attorneys" and to all county officers. These prescribed procedures are materially different from those encompassed within Art. 332d governing the removal of prosecuting attorneys, who are defined as inclusive of county, criminal or district at-

torneys. The Art. 5970, *et seq.*, proceeding, for example, may be initiated by a citizen of the State. An Art. 332d proceeding is initiated in the district court by the Council only after extensive investigation which may include a hearing by a master appointed by the Supreme Court. Section 10(e) requires the appointment of a special judge to hear the case, and the appointment of an attorney to prosecute the case. No such requirements attach to the Art. 5970, *et seq.*, proceeding.

### c. *The County Clerk*

Article 5, § 20 of the Texas Constitution provides for the office of county clerk. He is an elected official who also serves as a clerk of court to the district courts in the counties with a population of less than 8,000. *Id.* In larger counties, such as Dallas County, his duties include issuing marriage licenses, Tex.Stat.Rev.Civ.Ann. art. 1935 (Vernon 1982), recording deeds, mortgages and other instruments, *id.* art. 1941, and serving as a custodian of records. *Id.* art. 1942. In addition, the clerk is the ex-officio clerk of the County Commissioners Court with the duty of keeping minutes of their proceedings. *Id.* art. 1940. He also assists the commissioners court by issuing all writs, notices and process necessary to execute its decisions. *Id.* art. 2345. The clerk takes an oath and posts a bond payable to the county.[2] *Id.* art. 1937, § 3. This bond can be substantial (it is fixed by the County Commissioners Court at an amount between $5,000 and $500,000, *id.* art. 1937, § 1), but the County Commissioners Court is required to pay the premiums on the bond out of the general fund of the county. *Id.* art. 1937, § 5. A certified copy of the clerk's bond may be produced in the name of the county when it is sued by a party who has been injured by the clerk's actions. *Id.* art. 1937, § 1. The clerk is elected by the voters of the county for a four-year term, *id.* art. 1935; Tex.Const. art. 5, § 20, and vacancies in the office are filled by the Commissioners Court. *Id.*

The clerk can be suspended and removed under the supervision of a state district judge under the same procedures that were described above in relation to the County Judge and County Commissioners. Tex. Rev.Civ.Stat.Ann. art. 5970–5987. The County Clerk is compensated out of the Officer's Salary Fund in the same manner as the County Judge, Commissioners and other officials. *Id.* arts. 3883i, § 8(b), § 12 and 3912e–4d, § 5. The state places fees in this fund when the clerk performs duties that aid criminal prosecutions.

The local electorate cannot abolish the offices of County Judge, County Clerk or Criminal District Attorney or combine their functions. *Id.* Their suspension and removal is supervised by district court judges. Tex.Rev.Civ.Stat.Ann. arts. 5970–5989 (Vernon 1982). These officers carry out a number of tasks for the state including the collection of taxes and supervision of elections. All of them can be described as "state" officers when performing state tasks. In fact, the Texas courts have described the County Sheriff, *Clark v. Finley*, 93 Tex. 171, 54 S.W. 343 (1898) and County Treasurer, *Moncrief v. Gurley*, 609 S.W.2d 863 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n. r. e.) as state officers. On the other hand, these officers are locally elected and vacancies in these positions are filled by the County Commissioners Court.

Of the officers discussed, the criminal district attorney is most closely associated with and supervised by the state. He spends the vast majority of his time representing the state in criminal and civil matters; the state reimburses the county for time he spends representing the state in criminal matters; his bond is payable to the governor rather than the county treasury; and the state has created a special body, the Prosecutor's Council, to assist and discipline him. The County Commissioners, Judge and Clerk are administrators who necessarily have a more local focus, but when their duties involve the state prosecutorial func-

**2.** It should be noted that at one time the County Clerk's bond was payable to the Governor.

Tex.Rev.Civ.Stat. art. 1937 (Vernon 1964).

tion, they, too, in terms of their function, are state officers. Texas counties also have dual tasks, both local and state.

### 2. *Texas Counties' Local Governmental Functions and Capacity for Providing Local Self-Governance*

#### a. *Local Functions*

In recent years counties have provided some direct services to local citizens. *See, e.g.,* Tex.Rev.Civ.Stat.Ann. art. 2351g–2 (Vernon 1982) (provision of disposal facilities). For the most part, however, the state has either provided these services directly, Texas Legislative Council, Staff Research Report, Local Government Part I—Setting and Primary Income Sources 17, 20 (1951), authorized the county to enter contracts with other entities to perform these services, Tex.Rev.Civ.Stat.Ann. art. 2351a, § 2, (Vernon 1982), or created "special districts" to perform services in areas such as public health, education, welfare and flood control. Texas Legislative Council at 17, 20. Special districts are created to fill a particular need and often exercise authority over an area that includes parts of more than one county. *Laje v. Thomason,* 665 F.2d 724 (5th Cir. 1982).

#### b. *Capacity for Self-Governance*

A county is described in the Texas statutes as "a body corporate and politic," Tex. Rev.Civ.Stat.Ann. art. 1572 (Vernon 1982 Supp.), but it can be distinguished from a "Municipal Corporation" even though counties are discussed in Article II of the Texas Constitution entitled "Municipal Corporations." Cities are created primarily for the benefit of their citizens, while counties are primarily the local "arms" or agents of the state. *Heigel v. Wichita County,* 84 Tex. 392, 19 S.W. 562 (Tex.1892); *City of Galveston v. Posnainsky,* 62 Tex. 118 (Tex.1886). This difference was highlighted in *City of Sherman v. Shobe,* 94 Tex. 129, 58 S.W. 949 (Tex.1900), which held that counties were not subject to garnishment:

> Counties are commonly designated quasi-corporations for the reason that, being but political subdivisions of the state, and organized purely for the purposes of government, they differ essentially not

only from private corporations but also from such public corporations as towns and cities, which are voluntary, and are established largely for the private interests of their inhabitants. *City of Galveston v. Posnainsky,* 62 Tex. 118. Our statutes, it is true, expressly declare that "each county ... shall be a body corporate and politic." This merely confers upon the counties corporate powers for the more effectual performance of the functions for which they were created, and clearly was not intended to place them upon the footing of private corporations or of other municipalities. *Id.* 58 S.W. at 949–50.

The difference between counties and cities discussed in these early decisions remains. The primary responsibility of counties is to carry out state functions, while cities provide local services such as police and fire protection. An important difference between the two types of governmental units is that counties have no power to enact ordinances, but under their charters, cities of more than 5,000 inhabitants have this power. Tex.Const. art. 11, § 5, Tex. Rev.Civ.Stat.Ann. art. 1175, § 34 (Vernon 1982). The broad nature of cities' capacity to provide local self-governance is demonstrated by the opening language of the statute which enumerates some of the powers of home rule cities: "Cities adopting the charter or amendment hereunder shall have full power of self-government." *Id.* Cities generally have greater discretion than do counties in carrying out certain functions. For example, they can engage agents or employees on any terms of payment acceptable to both parties. *Taxpayers Ass'n of Harris Co. v. Houston,* 100 S.W.2d 1066, (Tex.Civ.App.—Galveston, 1936), *aff'd* 129 Tex. 627, 105 S.W.2d 655; *State ex rel. Boree v. Catlin,* 84 Tex. 48, 19 S.W. 302 (Tex.1892).

The limited constitutional and statutory powers given to counties are generally interpreted more narrowly than those of cities. *Tri City Fresh Water Supply Dist. No. 2 of Harris County v. Mann,* 135 Tex. 280, 142 S.W.2d 945 (Tex.1940). This "dou-

ble standard" was pointed out in *Stratton v. Commissioners Court*, 137 S.W. 1170 (Tex. Civ.App.—San Antonio 1911, writ ref'd n. r. e.), in which the court, after a close examination of the relevant statutes, determined that a county had the power to impose a tax for the construction of a county courthouse:

> A distinction is usually made between municipal corporations, such as incorporated cities, and quasi-corporations such as counties and townships. The powers of such governmental agencies are generally more strictly construed than those of municipal corporations. *Id.* at 1177.

On the other hand, counties do enjoy a measure of fiscal independence, having the power to levy taxes for "county purposes." Such revenues are maintained in a separate county treasury. Tex.Const. art. 8, § 9.

In sum, county government provides relatively few direct services to citizens. In addition, their capacity to respond to local needs and desires is limited and those powers are narrowly construed by the courts.

### 3. *Texas Counties as Administrative Arms of the State*

Texas counties perform a number of functions for the state including the supervision of state elections, the collection of state property taxes, the construction of state roads, bridges and ferries, and the administration of justice. The Texas Supreme Court has emphasized that when counties act in certain capacities they are agents of the state. *Childress County v. State*, 127 Tex. 343, 92 S.W.2d 1011 (Tex. 1936); *Bexar County v. Linden*, 110 Tex. 339, 220 S.W. 761 (Tex.1920). In *Childress County*, the state granted the county property for educational purposes which the county had sold to private parties and later retrieved when the private parties failed to make required payments. The state had acquired a tax lien against the property while it was in the hands of the private parties and attempted to assert it against the county. The court declared the tax lien invalid because it viewed the county as an arm of the state which carries out state functions:

> The land involved is agricultural school land. . . . [State law] expressly provides that such land may be taxed as privately owned lands, except that it may not be taxed for state purposes. The county is merely an arm of the state. It is a political subdivision thereof. In view of the relation of a county to the state, the state may use, and frequently does use, a county as its agent in the discharge of the State's functions and duties. [citations omitted]. The state has appropriated and dedicated to counties, for public school purposes, a part of its public domain. The title thereto is vested in the counties. . . . This is for the benefit of the state as well as for the benefit of the counties. When the title to this land reverted to Childress county, it also, in a certain sense, reverted to the state. . . . *Id.* 92 S.W.2d at 1015–16.

When the county acts as an administrative body carrying out important state functions, it is not surprising that the state exercises tight control over the execution of these functions. W. E. Benton, *Texas, Its Government and Politics*, 230–31 (3rd ed. 1972). Indeed, the legislature has drafted specific legislation detailing the way in which counties are to perform state functions as one means of controlling county administration of state policy. *See, e.g.*, Tex.Rev.Civ.Stat.Ann. art. 2351a–6 (Vernon 1982). In addition, the State's control over the performance of these functions has been aided by judicially placed restrictions on the county's power to carry out these functions. Unless a particular county action is explicitly authorized by the constitution or a statute, the county will not be allowed to exercise it. For example, in *Miller v. El Paso County*, 136 Tex. 370, 150 S.W.2d 1000 (Tex.1941), the court held that a statutory provision did not give the county power to impose a tax for the purpose of promoting growth and development of the county. In *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451 (Tex.1948), the court held that the county had no authority to appoint a "County Road Unit Supervisor" although it was authorized to appoint a

number of other officials whose jobs related to the task of road construction and maintenance. Legislation related to counties is narrowly drafted and the courts have taken the position that the state has conferred "duties" rather than "privileges" to the counties, which are to be carried out in the manner prescribed by the state. *Orndorff v. State*, 108 S.W.2d 206 (Tex.Civ.App.—El Paso 1937, writ ref'd n. r. e.) (county officers fall within the definition of those officers who are considered "*under* the State government"). Though the state cannot totally eliminate county discretion in exercising these state functions, F. M. Stewart and J. L. Clark, *The Constitution and Government of Texas*, 183 (4th ed. 1949); C. McClesky, *The Government and Politics of Texas*, 304 (2d ed. 1966), students of state government believe the state is moving toward even greater control over the county administration of certain state functions such as the collection of state property tax, J. C. May, S. A. McCorkle and D. Smith, *Texas Government* 354 (8th ed. 1980), as evidenced by its creation of state supervisory bodies such as the Prosecutor's Council, Tex.Rev.Civ.Stat.Ann. art. 332d (Vernon 1982).

### III. *The County's Liability*

■ For the county to be liable in this case, the accused system must be so attributed to it as to represent the policy or custom of the county. Implicit in this attribution is that the actors responsible for it were acting for the county qua county. If their acts were not subject to county control, the absence of county policy is an *a fortiori* conclusion. *Monell v. Department of Social Services*, 436 U.S. 568, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, the prosecutorial activities were undertaken to meet a state-created duty and were not subject to control by the county. Given the historical duality of county function, categorization of a state or county activity is best viewed in functional terms. The Texas Supreme Court emphasized in *Bexar County v. Linden*, 110 Tex. 339, 220 S.W. 761 (1920):

A principal State function which [counties] perform, in whose performance they exercise essentially State powers, is the administration of the State's justice. Their local courts exist for no other purpose. Their local constabulary is to keep the State's peace. They represent the State's power in the different duties with which they are charged, and in the execution of those duties they exercise the State's power for the common welfare....

At all times, the individual defendants here, the Criminal District Attorney, the County Clerk and the County Criminal Judges, were functioning as state not county officers. They were enforcing the state criminal law. The complaint, in fact, was issued in the name of the state. In other words, there is no county criminal law to enforce.

[I]t does not follow that because an officer is called a "county officer" the functions he exercises are exercised for the (county). They may be state officers though their jurisdiction or powers may be confined to the limits of the county....

*Connor v. Zackry*, 54 Tex.Civ.App. 188, 117 S.W. 177 (1909) (quoting *Jernigan v. Finley*, 90 Tex. 205, 38 S.W. 24, 25 (1896). As noted, the reality is that the county had no control over these individual defendants, whose acts, the plaintiffs argue, "may fairly be said to represent official [county] policy." 436 U.S. at 694, 98 S.Ct. at 2037. Of course, a citizen or the county is authorized to bring a complaint against the County Clerk or judges, but even so only a state court can suspend or remove them. Tex. Rev.Civ.Stat.Ann. art. 5970–5989. Indeed, the District Attorney can only be suspended or removed after investigation and complaint by the state Prosecutor's Council and a subsequent trial in state court. Tex.Rev. Civ.Stat.Ann. art. 332d.

The court's conclusion in *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980), that a county judge executing his discretionary authority under a state statute was in effect a state rather than a county officer and that the county would not be liable

under § 1983 for his actions, strongly suggests that the County Clerk, county judges and District Attorney in this case were exercising state rather than county policy. The court there adopted a functional analysis inquiry into whether when the acts at issue were done the official was wearing his county or state badge. The court explained:

> Because of the unique structure of county government in Texas, the [county] judge—like other elected county officials, such as the sheriff and treasurer—holds virtually absolute sway over the particular task or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein. [citation omitted]. Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under section 1983. [citations omitted]. The narrow authority delegated to the county judge in [Tex. Educ.Code Ann. § 4.28 (Vernon 1972) to compel disclosure of the names of those sponsoring a boycott of the schools] bears no relation to his traditional role in the administration of county government or to the discretionary powers delegated to him by state statute in aid of that role. Instead, his duty in implementing section 4.28, much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute for which the citizens of a particular county should not bear singular responsibility.

619 F.2d at 404.

It necessarily follows, given the teaching of *Monell*, that Dallas County is not liable for damages under section 1983 because the accused practices were implemented by state officers, not county officers. The acts were neither done for the county nor subject to its control. The accused practices can then hardly be said to be a county custom or practice.

## B. *The Eleventh Amendment Issue*

The county has presented a strong argument that in administering the prosecutorial function it is protected by the eleventh amendment as an arm of the state. Without deciding that issue, I note that the fifth circuit has suggested whether a county is a "person" under *Monell*, because implementing county policy, and whether the county is immune as an arm of the state are "dependent upon the same reasoning." *See Van Ooteghem v. Gray*, 654 F.2d 304 (5th Cir. 1981). In *United Carolina Bank v. Board of Regents*, 665 F.2d 553 (5th Cir. 1982), the court focused on (1) state law defining the entity and (2) state control over the entity in finding a university immune under the eleventh amendment. The third inquiry by the *United Carolina* court, the entity's lack of fiscal autonomy, might pose a problem on the facts before this court. Nonetheless, the state does pay fees for services rendered by the officials in conducting criminal prosecutions and the county is subject to state auditing and reporting requirements. Furthermore, the *United Carolina* court suggested that the eleventh amendment is not only applicable when payment of a judgment would be directly out of the state treasury but also when payment would "interfere" with the state's fiscal autonomy. While the argument for eleventh amendment immunity for counties is strong, I do not, because I need not, reach it here. It bears emphasis that the eleventh amendment would bar only suits in federal court. I have, in refusing injunctive relief, expressed my reluctance to intrude into state functions. The rush to by-pass the state courts so much in vogue is neither necessary nor beneficial to either federal or state courts. More to the point, the eleventh amendment represents an expression of federalism aimed directly at overturning a decision of the federal courts. That strong preference for state courts in suits for money damages against states ought not be forgotten in its interpretation.

## IV. *The Liability of the Criminal District Attorney*

■ The jury found Henry Wade, Dallas County's Criminal District Attorney, liable

for not advising the county to change its system for issuing misdemeanor capias. A review of the Texas authority on the relationship between the county and the Criminal District Attorney indicates Wade could not be held liable for failing to advise the county on this question. The primary task of a Criminal District Attorney is to represent the State in criminal and civil matters. He is almost wholly "a judicial officer of the state and has very little to do with the administration of the county." H. G. James at 42.

The obligation of the Criminal District Attorney is expressly stated by statute:

The district and county attorneys, upon request, shall give an opinion or advice in writing to any county or precinct officer of their district or county, touching their official duties.

Tex.Rev.Civ.Stat.Ann. art. 334 (Vernon 1982).

There is no evidence that any Dallas County official submitted a request, written or otherwise, asking Wade's advice concerning the county's system for issuing misdemeanor capias. Article 334 does not impose a duty on a criminal district attorney to provide unsolicited legal advice to a county.

It might also be argued that Henry Wade was required to give the advice in question because the Criminal District Attorney is required to represent county officials and employees in suits involving acts they performed as part of their public duties. *Id.* art. 332c. There is a great deal of difference, however, between an obligation to represent a county official who has been sued in relation to his public duties and an obligation to monitor independently the manner in which those officials carry out their public duties.

The Texas courts have emphasized that the Criminal District Attorney has a limited responsibility to the county. He is not required "to represent the county in its general legal business or the conduct of ordinary civil actions." *Hill Farm, Inc. v. Hill County,* 425 S.W.2d 414, 417 (Tex.Civ.App.—

Waco, 1968), *aff'd on other grounds,* 436 S.W.2d 320 (Tex.1969).

Although he is locally elected, Tex.Const. art. 5, § 21, he is primarily responsible to the state. His bond is payable to the governor, Tex.Stat.Ann. art. 326k-1 (Vernon 1982), and he is disciplined and advised by a centralized agency of the judicial department of state government, the Prosecutor's Council. *Id.* at 332d.

The state legislature has defined the duty of the District Attorney to render legal advice. There being no evidence that he breached that duty, he cannot be held liable.[3]

---

**3.** Insofar as the actual preparation and filing of the complaint here, Wade enjoyed immunity as a prosecutor. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).