**COUNTY COMMISSIONERS COURT OF DALLAS COUNTY, Texas, Appellant,**

v.

**Roger G. WILLIAMS et al., Appellees.**

**No. 11–82–048–CV.**

Court of Appeals of Texas,
Eastland.

Aug. 12, 1982.

Rehearing Denied Sept. 9, 1982.

Earl Luna, Law Offices of Earl Luna, Dallas, for appellant.

Bert Bader, III, Bader & Cox, G.H. Kelsoe, Kelsoe & Kelsoe, Dallas, John Wright, John Wright & Associates, Grand Prairie, Ben Krage, Dallas, for appellees.

McCLOUD, Chief Justice.

Roger G. Williams, a licensed Texas attorney, sued the Commissioners Court of Dallas County, Garry Weber, County Judge, and Jim Jackson, Nancy Judy, Jim Tyson and Roy Orr, Commissioners of Dallas County, attacking the allocation of court space to district courts trying civil cases. Plaintiff sought review of space allocation orders issued by the commissioners court, alleging that the defendants had embarked on a course of discriminatory, arbitrary and capricious policies of giving preferential courtroom space to criminal courts. Plaintiff alleged that defendants forced courtroom sharing, failed to provide courtrooms, provided inadequate courtrooms, and scattered the location of civil district courtrooms over several buildings. Also under review is the order of the trial court, reassigning various courts to different quarters, enjoining renovation efforts initiated by defendants and requiring defendants to appropriate funds to pay expenditures necessitated by the order.

The trial court permitted plaintiff to add five civil district judges as involuntary plaintiffs. Plaintiff alleged that the involuntary plaintiffs were affected by inadequate facilities, and that they were unable to become voluntary plaintiffs because of political pressures.

The trial court also permitted the intervention of Burt Barr, Ross Hardin, Robert Hickman and Al Maddox, who sought a declaratory judgment urging that defendants were violating Tex. Rev. Civ. Stat. Ann. art. 1702h (Vernon 1962), governing the operation of county law libraries.[1]

After all parties had closed, the trial court dismissed Burt Barr as a party to the suit, and then appointed Barr "Receiver" in the judgment with express "power and authority to oversee the carrying out" of the court's orders to the "Commissioners Court" and Barr was directed to report back, "from time to time" to the trial court as to the progress of "the Defendants in complying" with the trial court's order.[2]

The trial court's order provides in part:

ORDERED, ADJUDGED AND DECREED that:

1. The present assignment of Court space in Dallas County, Texas for District Courts is, as a matter of law, inadequate, unreasonable, arbitrary, capricious, discriminatory and void.

1. That the Defendants shall carry out the following orders of the Court and this Court orders the County Commissioners Court of Dallas County, Texas to relocate the County Courts of Criminal Appeals and their staffs to Rooms 300 and 305 of the Records Building as soon as those

---

1. Intervenors are not members of the Dallas Bar Association Law Library Committee, vested with management responsibility subject to commissioners court approval under Section 5 of said act.

2. Tex. Rev. Civ. Stat. Ann. art. 2294 (Vernon 1971) provides that:

No party, attorney, or any person interested in any way in an action for the appointment of a receiver shall be appointed receiver therein.

facilities are complete but in no event later than April 12, 1982;

2. The Defendants are ORDERED to assign the 291st District Court to the Court space now occupied by County Court of Criminal Appeals No. 1 on the 4th Floor of the Government Center;

3. The Defendants are ORDERED to assign the 292nd District Court to the Court space now occupied by Justice of the Peace, Precinct 8, Place 2 on the 5th Floor of the Government Center;

4. The Defendants are ORDERED to assign the 101st District Court to the Court space now occupied by the 291st District Court on the 5th Floor of the Government Center;

5. The Defendants are ORDERED to assign the 14th District Court to the Court space now occupied by the 292nd District Court on the 5th Floor of the Government Center;

6. The Defendants are ORDERED to assign the 160th District Court to the Court space formerly occupied by the 68th District Court on the 2nd Floor of the Government Center when the space is restored;

7. The Defendants are ORDERED to assign the 95th District Court to the Court space formerly occupied by the 95th District Court on the 2nd Floor of the Government Center when the space is restored;

8. The Defendants are ORDERED to assign the 191st District Court to the Court space now occupied by the County Criminal Court of Appeals No. 2 on the 4th Floor of the Government Center;

9. That the Defendants are OR-DERED to assign the 298th District Court to the Court space now occupied by the 191st District Court on the 4th Floor of the Records Building Annex.

Such Orders embodied in numbers three through nine above shall be carried out immediately after number two above is carried out.

10. The Defendants are hereby enjoined from taking any action to change the former 95th and 68th Courtrooms on the Second Floor of the Government Center to Court of Appeals office space; and this injunction specifically includes advertising for bids, accepting bids, letting contracts or otherwise committing public monies regarding such space without authority of this Court.

11. That the Defendants are OR-DERED to immediately commence restoring the the space on the Second Floor of the Government Center formerly occupied by the 68th and 95th District Courts to the condition as a District Courtroom when it was occupied by the 68th and 95th District Courts; that such restoration shall proceed with all speed and be completed prior to May 15, 1982.

12. That this court recommends that the Defendants immediately relocate the Justices and Staff of the Court of Appeals which are now occupying the suites on the northwest quadrant of the Second Floor of the Government Center to the Sixth Floor of the Records Building;

13. That this Court finds that the Court of Appeals needs a facility constructed to its needs and its present facility is clearly inadequate.

14. That the Defendants are ordered to appropriate and raise sufficient funds to pay the expenditures and to provide sufficient materials and manpower to carry out this Order.

The trial court denied defendants' motion for an order granting supersedeas or for an order staying the enforcement of the judgment pending appeal and ordered the defendants to proceed with the terms of the judgment "at once." On April 14, 1982, this court issued its order vacating the trial court's order denying supersedeas and further ordered that Judge Walker stay the enforcement of the judgment. See *Weber v. Walker,* 591 S.W.2d 559 (Tex. Civ. App.—Dallas 1979, no writ).

We first determine if the order entered and appealed is a final appealable judgment. The trial court's twelve page order is designated as "Corrected Temporary Order and Declaratory Judgment." The order concludes:

This is not a Final Order. This Court finds that the implementation of this Order will save the taxpayers of Dallas County, Texas, an amount in excess of $800,000.00. This Court also intends to retain supervision of this litigation until this Court and this Court's future orders are carried out to eliminate the present crisis facing the District Courts of Dallas County, Texas because of the failure of these Defendants to perform their duties.

A judgment is final if it, when considered in the light of the entire record, disposes of all the issues and parties. *Hargrove v. Insurance Inv. Corporation,* 176 S.W.2d 744 (Tex. 1944). The court in *Hargrove* added:

> However, if the rights controverted by the parties be settled by the judgment, it will be held final, although further proceedings should be required to carry the judgment into full effect. Such proceedings may be expressly provided for in the face of the judgment without affecting its finality, provided they are merely incidental to its proper execution.

The applicable rule, when the judgment fails to expressly dispose of all parties and issues made by the pleadings, was announced in *North East Independent School District v. Aldridge,* 400 S.W.2d 893 (Tex. 1966) as follows:

> When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.

The order in the instant case clearly disposed of all issues and parties. The order determined the space allocation for several district courts and the court of appeals. Any further proceedings were merely incidental to the proper execution of the judgment. See *Grayson County Officials v. Dennard,* 574 S.W.2d 179 (Tex. Civ. App.—

Eastland 1978, writ ref'd n.r.e.). The designation that the order is "Temporary" and the statement that the trial court "intends to retain supervision of this litigation" will not prevent the order from being a final judgment if it disposes of all issues and parties. In *Case v. Walker,* 573 S.W.2d 513 (Tex. 1978) the order was held to be final even though it stated that Judge Walker would:

> (R)etain continuing jurisdiction of this cause and of all matters of controversy herein for whatever period of time is necessary to effectuate the necessary revaluation and appraisal of all taxable property in Grayson County.

Defendants contend that neither the plaintiff, Roger G. Williams, nor the intervenors alleged facts showing that they had standing to sue defendants because they failed to allege that they suffered a special or peculiar damage, not shared by the general public. Defendants cite *City of San Antonio v. Stumburg,* 70 Tex. 366, 7 S.W. 754 (1888) and *Yett v. Cook,* 115 Tex. 205, 281 S.W. 837 (1926) which discuss the general rule that a plaintiff fails to establish a justiciable interest if as a private citizen, he asserts a public, as distinguished from a private, right and he fails to show that the matter in dispute affects him differently from other citizens. The cited cases are distinguishable.

We hold that Williams, a practicing attorney in Dallas County, has standing to bring the principal suit. Due to the special interest that attorneys have in their profession, they have standing to maintain a suit challenging alleged acts which damage their profession. *Touchy v. Houston Legal Foundation,* 432 S.W.2d 690 (Tex. 1968).

Plaintiff properly pled his status as an attorney actively practicing law in the county and district courts of Dallas County, further alleging that the defendants have acted arbitrarily in allocation of courtroom space to the prejudice of plaintiff's rights, the rights of his clients, the citizens of Dallas County and our system of justice. According to *Touchy,* supra:

(T)he interest of the legal profession, as well as the interest of the public, would be better served by recognizing the right of private attorneys to institute an action, upon proper and sufficient allegations to enjoin ... conduct of non-lawyers which is demeaning to the legal profession and harmful to the plaintiffs.

■ The intervenors, as taxpayers, have standing to restrain the alleged illegal expenditures by the commissioners court. *Hachar v. County of Webb,* 563 S.W.2d 693 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.). We hold, however, that the trial court abused its discretion in denying defendants' motion to strike the intervention. Plaintiff's suit and intervenors' suit do not involve common questions of law or fact. Plaintiff's suit is concerned with courtroom space allocation of civil district courts. Intervenors sought a declaratory judgment that defendants were violating Tex. Rev. Civ. Stat. Ann. art. 1702h (Vernon 1962). Intervenors did not show by their pleadings that they had a direct legal or equitable interest in the suit filed by plaintiff or that their rights or interests would be affected by a judgment in the principal suit. Intervenors suit was an independent cause of action involving subject matter distinct and entirely foreign to that involved in the original suit. *Mendez v. Brewer,* 626 S.W.2d 498 (Tex. 1982); *Bangs v. Sullivan,* 33 Tex. Civ. App. 30, 73 S.W. 74 (1903, writ ref'd) 1 McDONALD, TEXAS CIVIL PRACTICE Section 3.47 (1981).

The trial court found that the court facilities provided for several of the civil district courts were "inadequate" for the judge to "perform his duties and have impaired the Court's ability to carry out its mandated responsibilities." The court found that the methods used by the commissioners court in allocating court space:

In recent months and more particularly since the 18th day of May, 1981, when Order No. 81–811 of the Commissioners Court was made, are discriminatory, arbitrary, capricious and, ... of such a nature as to amount to a deliberate attack on the judiciary and evidences an indifference to its responsibilities.

The court found that the concept of "Courtroom sharing" by district courts is as a "matter of fact and law inadequate." The court found that there is "no authority in law to authorize the Defendants to house the Court of Appeals" and that the "desirability for the Court of Appeals to be located in the County Complex ... may not cause a shortage of necessary space for the District Courts." The court further found that there:

(I)s no legal justification for the housing of a Justice of the Peace and his staff in District Court facility as has been done for the Honorable Cleophus Steele, Justice of the Peace, Precinct 8, Place 2.

Plaintiff urges that the trial court had the inherent power, recognized in *Vondy v. Commissioners Court of Uvalde County,* 620 S.W.2d 104 (Tex. 1981), to enter its order to protect and preserve the proper administration of the judicial system. Plaintiff additionally relies upon Tex. Const. art. 5, section 8 (Vernon Supp. 1982) which expressly provides that the district court shall have "appellate jurisdiction and general supervisory control over the County Commissioners' Court with such exceptions and under such regulations as may be prescribed by law."

Tex. Rev. Civ. Stat. Ann. art. 2351 (Vernon 1971) states that the Commissioners court shall: "7. Provide and keep in repair court houses, jails and all necessary public buildings."

Tex. Rev. Civ. Stat. Ann. art. 2370b (Vernon Supp. 1982) provides in part:

Section 1. Whenever the Commissioners Court of any county determines that the county courthouse is not adequate in size or facilities to properly house all county and district offices and all county and district courts and all justice of the peace courts for the precincts in which the courthouse is situated ... (T)he Commissioners Court may purchase, construct, reconstruct, remodel, improve and equip, or otherwise acquire an office building or buildings ....

■ If, in passing the orders regarding space allocation for the various trial courts and the court of appeals, the commissioners court acted arbitrarily without the exercise of any discretion, or clearly abused its discretion, the district court in the exercise of its equitable power can review and abrogate such action. Tex. Const. art. 5, Section 8 (Vernon Supp. 1982); Tex. Rev. Civ. Stat. Ann. art. 1908 (Vernon 1964); *Stovall v. Shivers*, 129 Tex. 256, 103 S.W.2d 363 (Tex. Comm'n App. 1937, opinion adopted); *Rodriguez v. Vera*, 249 S.W.2d 689 (Tex. Civ. App.—San Antonio 1952, no writ).

Plaintiff attacks the allocation of space in the Government Center to the court of appeals; the concept of courtroom sharing; the preferential treatment given criminal district judges; the providing of a district courtroom in the Government Center to a justice of the peace; and the failure of the defendants to provide adequate courtroom space and court quarters to civil district judges.

On May 18, 1981, the commissioners court adopted order No. 81–811 which relocated certain judges. The order recited that the reason for the relocation was the anticipated addition of four new criminal district courts and the expansion of the court of appeals.

The Legislature added six new justices, effective September 1, 1981, to the Court of Appeals, Fifth Supreme Judicial District, located in the City of Dallas. Tex. Rev. Civ. Stat. Ann. art. 1812 (Vernon 1982). Prior to this time, the court of appeals was located on the second floor of the Government Center. Two civil district courtrooms, 68th and 95th, were located across the hall from the court of appeals. The commissioners court, anticipating the six new justices, decided to renovate the 68th and 95th district courtrooms and allocate that space to the court of appeals. Judge Walker's order nullifies that decision by the commissioners court and orders the commissioners court "to immediately commence restoring the space on the Second Floor of the Government Center formerly occupied by the 68th and 95th District Courts to the condition as a District Courtroom when it was occupied by the 68th and 95th District Court..."

Some of the civil district judges relocated by the order under attack were moved from ideally designed and equipped courtrooms located in the Government Center to other courtrooms, either in the Government Center or nearby buildings, which lacked many of the desired features of the former quarters and courtrooms. In some cases, a criminal district judge was assigned the better equipped quarters and courtroom previously occupied by a civil district judge. The May 18, 1981, order provided that two civil district judges would share courtroom space for a period of time. Also, a justice of the peace, who "specialized in arraignments," occupied the courtroom of one of the civil district courts after 5:00 p.m.

We point out, that the May 18, 1981, order of the commissioners court was an interim order. Some of the alleged problems that resulted from this order had been alleviated by the time of trial.

In 1977 Dallas County passed a substantial bond issue to build a new jail facility. The plans included the construction of approximately forty new courtrooms at the new "Sterrett Center." It was contemplated that these would be criminal courts. Due, however, to unforeseen "double-digit inflation," the planned court facilities at the "new jail" site cannot be built. It is apparent that Dallas County, like many other governmental agencies, is facing a severe space shortage. Defendants support a new bond issue to finance the construction of a new courts building.

■ We disagree with plaintiff that there is no authority for Dallas County to furnish facilities for the Dallas Court of Appeals. In *Childress County v. State*, 92 S.W.2d 1011 (Tex. 1936), the Court held:

The county is merely an arm of the state. It is a political subdivision thereof. In view of the relation of a county to the state, the state may use, and frequently does use, a county as its agent in the discharge of the State's functions and duties.

See also *Robbins v. Limestone County,* 268 S.W. 915, 916 (Tex. 1925); *Crane v. State of Texas,* 534 F.Supp. 1237 (N.D. Tex. 1982). The Dallas Court of Appeals is a state court, and Dallas County, as an agency of the state, is performing a proper function by providing building space for the court. The court of appeals has been located for many years on the second floor of the Government Center. The Dallas Bar Association presented the defendants with a resolution requesting that the court of appeals continue to occupy space on that floor in that building.

The courtrooms and quarters in the Government Center, as a whole, are very functional. Some of the facilities located near the Government Center and occupied by the involuntary plaintiffs leave a lot to be desired. We note, however, that the involuntary plaintiffs have continued to ably serve as trial judges even though the physical facilities are less than desirable. It is apparent that the criminal district courts have been assigned the larger and more adequately equipped courtrooms.

The justification for locating the criminal district judges in the Government Center is concern for security and accommodation of the expanded staffs provided the criminal courts by the Legislature. The present jail is located in the Government Center and there is considerable testimony that it would create an undue risk to transport prisoners to courtrooms outside the Government Center. The staff assigned to criminal district judges is much larger than that of the civil judges. Additionally, there is concern about the effect of the Speedy Trial Act, Tex. Code Crim. Pro. Ann. art. 32A.01 (Vernon Supp. 1982) which provides:

> Insofar as is practicable, the trial of a criminal action shall be given preference over trials of civil cases, and the trial of a criminal action against a defendant who is detained in jail pending trial of the action shall be given preference over trials of other criminal actions.

It is necessary to process the prisoners as fast as possible, because the jail is experiencing an acute population problem.

Plaintiff complains about the use of a Government Center courtroom by a justice of the peace. The evidence shows that the justice of the peace in question performs arraignments after 5:00 p.m. He arraigns "forty to fifty" persons per night. Persons to be arraigned are brought directly from the jail into court on a jail chain, some being charged with violent crimes. The judge has a holding cell near the courtroom and security is a major factor. The judge also conducts examining trials. Since the courtroom is only used by the justice of the peace after 5:00 p.m., it is available and is frequently used by a civil district judge during the day.

The courtroom sharing experiment did not prove successful and the judges involved had made other arrangements at the time of trial.

One civil judge, who was appointed in November 1981, did not have a permanent courtroom assigned to him for a period of time during which he used various available courtrooms. We note that this particular judge, while confronting a great deal of adversity, was averaging one jury trial a week. Also, at the time of trial, his permanent courtroom was nearing completion.

We point out that the plaintiff was unable to recall a single case of his which was passed or delayed because of the unavailability of courtroom space.

■ There is no statutory standard or guideline as to the size or specific facilities to be included in district courts. It is apparent that courtrooms and quarters found to be unacceptable by some would be appreciated by others. There is a great disparity throughout the state as to the size and efficiency of courtrooms and quarters. The commissioners court in the instant case was faced with the decision of who should receive the available space. There is evidence that those decisions were based upon the proximity of the jail, size of the court staff, and utilization of existing space. The record is filled with opinions of others who would have solved the space problem in a different manner. We hold, however, that

the defendants have not acted arbitrarily and capriciously. There is evidence that their decisions were based upon reason and rational choices.

We do not believe that the order entered by the trial court should be sustained under the doctrine that the trial court had "inherent power to act to protect and preserve the proper administration of the judicial system" as discussed in *Vondy v. Commissioners Court of Uvalde County,* supra. We first point out that the facts in *Vondy* and the instant case are vastly different. In *Vondy,* the commissioners court had refused to compensate an elected constable. The court held that the county commissioners must compensate the constable. The court noted that constables serve process in this state, and if constables are not compensated for their services the judicial process will be impaired because process may not be served.

In *McAfee v. State ex rel. Stodola,* 284 N.E.2d 778 (Ind. 1972), recognizing that the exercise of inherent power by the judiciary is not unlimited and that a court abuses its discretion when its inherent power is exercised extravagantly or arbitrarily, the court stated:

> Judges should constantly be aware that their constitutional responsibility to maintain the judicial system carries with it the corresponding responsibility to limit their requests to those things reasonably necessary in the operation of their courts and to refrain from any extravagant, arbitrary or unwarranted expenditures....

In the instant case, the trial court has interfered with the discretionary functions of the defendants. The trial court has entered an order rearranging the court space for several district courts and the Dallas Court of Appeals. We do not think the order was necessary to protect and preserve the judicial system. On the contrary, the trial court's order will bring chaos and uncertainty to the judicial system. If Judge Walker has the inherent power to determine the location of the various courtrooms and quarters in Dallas County, then no doubt one of the judges relocated by the appealed order, who is disenchanted with Judge Walker's order, may well assert the same alleged inherent power to again rearrange the available space as he determines it should be allocated. The trial court abused its discretion in entering the order reallocating the courtroom space ordered by the defendants.

The judgment in favor of the plaintiff and the involuntary plaintiffs against the defendants is reversed and judgment is rendered that they take nothing against the defendants. Judgment in favor of the intervenors is reversed and remanded.